### DUNN et al. v. MAYO MILLS.

(Circuit Court of Appeals, Third Circuit. February 1, 1905.)

#### No. 24.

1. AMENDMENT OF PLEADINGS—DISCRETION OF COURT.

 The allowance of amendments to pleadings is a matter purely discretionary with the trial court, and its action is not reviewable unless there has been a gross abuse of discretion. The allowance of amendments to a declaration which do not change the cause of action, or which affect only the mode of proving damages, is clearly within the court's discretion.

2. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL—APPLICATION OF RULE.

 In an action against a partnership on a writing evidencing a sale of goods by plaintiff, and containing all the essentials of a contract, by specifying the kind and quantity of goods bought and the price to be paid, the fact that it was signed only with the surname of a person as buyer, and that parol evidence was necessary and was given by plaintiff to identify such person as a partner in defendant firm, and to show that he contracted for and on its behalf, does not change its.character as a written contract, or render admissible parol evidence on the part of defendant to vary or contradict its terms by adding a condition not therein expressed.

3. SALE—CONSTRUCTION OF CONTRACT.

 A provision in a written contract for the sale and purchase of a stated quantity of goods, "deliveries to be made as wanted until further agreement," does not give the purchaser the right to decline to take the goods bought, no matter when tendered, but he is bound to accept them within a reasonable time; and, in an action for breach of the contract by his refusal to take the goods, what constituted a reasonable time is a question for the jury.

 [Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 356, 447.]

 Acheson, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

S. B. Price, for plaintiffs in error.

Dwight M. Lowrey, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. In this opinion the parties will be designated in accordance with their respective positions in the court below; that is to say, the defendant in error will be referred to as plaintiff, and the plaintiffs in error as defendants. The action was brought to recover $2,234.21, the balance claimed to be due from the defendants to the plaintiff upon an alleged contract in writing, which in the plaintiff's statement of claim was set forth as follows:

"The Mayo Mills, H. M. Daniel, Manager.
"517–519 Philadelphia Bourse.

"No. 1063.                                                         Nov. 5, 1900.

"Sold to Hazle Knitting Mills, Hazleton, Pa.

"60,000 lbs. 8's cones Mayo Carded Peeler.
"Delivery, 4000 weekly.
"Price, 18¾.
"Terms, 2 per cent. 10th month.
"Accepted by Mr. Kemp."

It appeared upon the trial that a mistake had been made in copying into the statement of claim an unsigned paper as above, and thereupon the plaintiff proposed to amend by substituting therefor a copy of the writing which had been signed "Kemp," by William H. Kemp, who was a partner in the defendant firm, as follows:

"Bot. of the Mayo Mills 60,000 lbs. 8's Mayo carded peeler on cones 4,000 weekly at 18¾ 2% 10th month less 2% for cones. Deliveries to be as wanted until further agreement.

"Nov. 5, 1900.                                    [Signed]        Kemp."

The statement further alleged that, upon the refusal of the defendants to receive and pay for any more yarn, "the plaintiff, after due notice, sold for account of the defendants, 4,703 pounds of 8's cotton yarn, the balance undelivered under the said contract, at 14 cents per pound, which was the then current market price and reasonable value of the said yarn," and this clause the plaintiff likewise asked to amend by inserting in lieu thereof the following:

"The balance of yarn undelivered at the date last aforesaid was 4,703 pounds, and the current reasonable market price of No. 8's cotton yarn at the date last aforesaid was 14 cents per pound."

The court permitted both of these amendments to be made, and the allowance of each of them, respectively, has been assigned for error. "It is well settled that * * * questions respecting amendments to the pleadings are purely discretionary matters for the consideration of the trial court, and, unless there has been gross abuse of that discretion, they are not reviewable in this court on writ of error" (Mexican Central Railway v. Pinney, 149 U. S. 201, 13 Sup. Ct. 859, 37 L. Ed. 699), and we have not been convinced that any abuse of discretion was committed in this instance. By the first of those amendments, nothing was effected but the addition to the copy exhibited in the original statement of the words "deliveries to be made when wanted, until further agreement," and the signature "Kemp." This did not change the cause of action. It but remedied a defective statement of it by correcting an inadvertence of the pleader; and, as the Supreme Court has said, "the trial court may at any time permit either of the parties to amend any defect in the process or pleadings upon such conditions as it shall, in its discretion or by its rules, prescribe." Bamberger v. Terry, 103 U. S. 43, 26 L. Ed. 317. This amendment "deprived the defendants of no rights" (The Tremolo Patent, 90 U. S. 527, 23 L. Ed. 97), and it could not have surprised them, for an exact copy of the paper which it inserted in the declaration had been set out in the affidavit of defense, in which it was averred that it and it alone, was "the true and correct contract." The second amendment was even more clearly admissible.

It did not relate to the cause of action at all, but solely to the measure of damages. The statement alleged that after breach the plaintiff had sold the quantity of yarn undelivered upon the contract "at 14 cents per pound, which was the then current market price and reasonable value of the said yarn"; but no such specific sale had in fact been made, and therefore the allegation that there had been was properly stricken out, so as to leave the amount of the recoverable damages for determination from evidence of market price simply. That the trial court had authority to permit this to be done appears from the cases already cited, and we think that in doing so it properly exercised its discretion. "Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice. Usually, to permit or refuse rests in the discretion of the court, and the result in either case is not assignable for error. This subject was fully examined in Tiernan's Executors v. Woodruff, 5 McLean, 135, Fed. Cas. No. 14,027. It is there shown that both in the English and American courts amendments have been allowed, in well-considered cases, for the purpose of introducing into the suit a new and independent cause of action." Tilton v. Cofield et al., 93 U. S. 163, 23 L. Ed. 858. This was going further than the learned judge went in the present case; and we think that, in going as far as he did, he was clearly right.

The remaining specifications, as summarized in the brief submitted in their support, present but two questions, and these will be separately considered:

1. By the plaintiff's amended statement a written contract of purchase and sale was sufficiently alleged, and this allegation was sustained by proof. The instrument declared upon and produced appears on its face to be a contract. It is not silent upon any matter essential to its completeness. It lacks no element of agreement which oral evidence was needed to supply. It is perfect in itself. Mfg. Co. v. Goddard, 55 U. S. 446, 14 L. Ed. 493. It specifies the kind and quantity of the commodity bought, and the price to be paid. It fully discloses a sale— "a transmutation of property from one man to another in consideration of some price." 2 Bl. Com. 446. Inspection of it reveals nothing to induce belief that it was not intended to be a complete and final statement of the whole of the transaction, and the only object for which the defendants offered the oral evidence in question was to add to its contents, "contrary to the settled and salutary rule upon that subject." Seitz v. Brewers' Refrigerating Co., 141 U. S. 517, 12 Sup. Ct. 46, 35 L. Ed. 837. The fact that the writing stood in need of construction did not exclude it from the operation of this rule. Whether it was correctly construed is a distinct question, which will be considered further on. All that it is necessary to say at this point is that no case has been cited, and none, we think, could be found, to support the contention that, because a document presents a patent ambiguity, extrinsic evidence may be given to add to or vary its terms. Where, for the ascertainment of the meaning of any part of its language or its relation to facts, a resort to oral evidence is requisite, such evidence, subject to certain conditions and limitations, is undoubtedly relevant. But to interpret the words contained in a writing is one thing, and to add to them is another. For the one purpose oral testimony has often

been received, but for the other it is wholly inadmissible, because "the instrument itself must be considered as containing the true agreement between the parties." Ph. & Am. Ev. 753. "The writing is the contractual act, of which that which is extrinsic * * * forms no part." Pitcairn v. Philip Hiss Co., 125 Fed. 113, 61 C. C. A. 657. The offer and admission of plaintiff's proof that the signature "Kemp" was made by William H. Kemp, and that he contracted for and on behalf of the defendant firm, of which he was a member, did not render the oral evidence rule inapplicable. That rule relates to the terms of the contract, and not to proof of the fact of its execution, or of the parties on whose behalf it was executed. Where a contract has been made partly by letters and partly by verbal communications, the evidence both of the letters and of the conversations should be submitted to the jury, whose province it then becomes to pass upon its effect as a whole. Elizabeth City Cotton Mills v. Loeb, 119 Fed. 154, 56 C. C. A. 42; Hood, Irvine & Co. v. Keen, 11 Serg. & R. 280. But here the entire and final agreement between the parties was embodied in the writing, and the plaintiff proposed no departure from it. The oral evidence he adduced went only to show that the defendants, as copartners, were bound by it; and to the contention that by the production of evidence for that purpose he opened the door for the reception of testimony to add to its contents, we cannot yield our assent. "There is no doubt that, where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract, on the one hand, to, and charge with liability on the other, the unnamed principals—'unnamed' meaning unnamed in the writing —and this whether the agreement be or be not required to be in writing by the statute of frauds, and this evidence in no way contradicts the written agreement." Calder v. Debell, L. R. 6 C. P. 486, 40 L. J. C. P. 89, 224, Eng. Ruling Cases (Am. Ed. 1902) vol. 2, p. 456. "A principal may be charged upon a written parol executory contract entered into by an agent in his own name, within his authority, although the name of the principal does not appear in the instrument and was not disclosed, and the party dealing with the agent supposed that he was acting for himself; and this doctrine obtains as well in respect to contracts which are required to be in writing, as those where a writing is not essential to their validity." Brady v. Nally, 151 N. Y. 258, 45 N. E. 547; Lerned v. Johns, 9 Allen, 420.

2. The contract being wholly in writing, its construction was for the court, and the legal effect of its only ambiguous part was rightly stated in the charge. The phrase, "deliveries to be made as wanted, until further agreement," could not have been intended to mean that the defendants were to be at liberty to refuse deliveries at any time, except, as by further agreement, they might consent to accept them. To have so interpreted this language would have been to hold that no binding contract had been actually made, although, from the instrument as a whole, it plainly appears that the parties supposed that they had made one. The deliveries were to be made, not if wanted, but "as wanted"; and we think that the understanding of the learned judge that this did not give the defendants the right to decline to take the

goods they had bought, no matter when tendered, was unquestionably correct. They were bound to accept in a reasonable time, and whether the time which had elapsed when they refused to do so was or was not a reasonable time was properly submitted to the jury for decision. Stevenson v. Kleppinger, 5 Watts (Pa.) 420; Muskegon Co. v. Keystone Co., 135 Pa. 132, 19 Atl. 1008; City of Elizabeth v. Fitzgerald, 114 Fed. 547, 52 C. C. A. 321.

Our conclusion is that none of the specifications of error can be sustained, and therefore the judgment of the Circuit Court is affirmed.

ACHESON, Circuit Judge (dissenting). Upon one point I dissent from the opinion of the majority of the court, and hence I cannot concur in the judgment of affirmance. This was a suit by the Mayo Mills against A. L. Dunn, William H. Kemp, and Henry W. Jacobs, copartners trading as Hazel Knitting Mills, to recover damages for the breach of an alleged contract of sale of yarns by the plaintiff to the defendants. The only written contract the plaintiff produced was the following paper:

"Bot. of the Mayo Mills 60,000 lbs. 8's Mayo carded peeler on cones 4,000 weekly at 18¾ 2% 10th month less 2% for cones. Deliveries to be made as wanted until further agreement.
"Nov. 5, 1900.                                        [Signed]        Kemp."

This paper did not show a contract between the parties to this suit. By its terms the buyer of the yarn was Kemp. and he only was liable to the plaintiff. In order to reach the defendant firm, it was necessary for the plaintiff to resort to parol evidence, and this the plaintiff did; calling and examining as a witness its manager, Henry M. Daniel, who negotiated with Kemp the contract in question, with a view to charge the defendant firm with liability. He testified as to what occurred and was said between himself and Kemp. The plaintiff thus made out its case by the introduction of parol evidence tending to show that the parties to the alleged contract were the Mayo Mills, on the one side, and the Hazel Knitting Mills, on the other side. This showing was essential to a recovery by the plaintiff against the defendants. As part of his testimony in chief, Daniel related a conversation between himself and Kemp, immediately before Kemp signed the paper, in respect to the terms of the proposed contract. Now, the defendants, on their side of the case, made several offers of evidence, which, in substance, were to prove the whole conversation between Daniel and Kemp at the time the order was given and the paper was signed by Kemp, and to show that it was then expressly agreed between Daniel and Kemp, as a condition of the purchase, that the yarn was to be taken if the defendant firm could use it satisfactorily in their business, but, if not, the yarn was not to be taken. The defendants' offers were rejected upon the rule that excludes parol evidence to contradict or vary a written contract complete in its terms. But this rule, it seems to me, was inapplicable here. The paper of November 7, 1900, was incomplete as against the defendants. Therefore the plaintiff resorted to parol evidence, and was obliged to do so. Without parol evidence the paper was inadmissible in this case. And here let it be observed that it was not enough for the plaintiff to prove that the signature "Kemp" stood

for William H. Kemp, and that he was a partner in the Hazel Knitting Mills firm. The plaintiff had to go further, and show by parol evidence that the contract was between it and the defendant firm. 1 Lindley on Par. *178. This text-writer states the law thus:

"If, therefore, one partner only enters into a written contract, the question whether the contract is confined to him, or whether it extends to him and his copartners, cannot be determined simply by the terms of the contract."

And because "the terms of the contract" signed "Kemp" did not import any liability on the part of the defendant firm, the plaintiff had recourse to parol evidence.

The contract which the plaintiff proved rested partly on a writing and partly in parol. This, it seems to me, is clear, for there can be no contract without parties. The element of parties is an essential element of any contract. Here this element, as against the defendants, had to be, and was, established by parol evidence. Hence I say this contract rested partly on a writing and partly in parol. But it is a familiar principle that, where a contract is thus made out partly by a written document and partly by parol evidence, it is to be treated as a parol contract. Leake on Contracts, 143; Moore v. Garwood, 4 Exch. 618; Harper v. Kean, 11 Serg. & R. 280. The contract sued on in this case, under the plaintiff's proofs, was not a written contract at all, but was a parol contract; and hence the rule excluding parol evidence to contradict or vary a written contract did not and could not apply to the defendant's offers.

The precise question now before us was not involved in any of the cases relied on to sustain the rulings of the court below. The authorities cited in the opinion of the majority of this court were concerned simply with the question of the admissibility of parol evidence to show that the person who signed a written contract was acting as agent for an unnamed principal, and they do not touch the further question as to the effect of the admission of such parol evidence in opening the door to the other side to introduce parol evidence. I do not doubt that it was competent for the plaintiff here to introduce parol evidence to show that Kemp was contracting for the defendant firm, but what I insist on is that, having gone into parol evidence to hold the defendants, the plaintiff was in no position to invoke against them the rule of exclusion. This view finds support in Bogk v. Gassert, 149 U. S. 17, 25, 13 Sup. Ct. 738, 37 L. Ed. 631, where it was held that, when one party has testified to his understanding of the written contracts which are the subject of the suit, he has no right to object to the other party giving his understanding of the contracts. In Waymart Water Company v. Borough of Waymart, 4 Pa. Super. Ct. 211, 219, it was held that where, in order to prove the assent of the borough council to the written contract sued on, the plaintiff can show no resolution or ordinance authorizing the contract, but must depend upon parol evidence of what was said and done at the council meeting at which the contract was signed, the plaintiff had no reason to complain of the admission of parol evidence to show that the assent was given conditionally, and that the writing does not embody the whole action of council in the matter.

In the present case, as we have seen, parol evidence on the part of the plaintiff was indispensable to show the defendants' alleged con-

tractual liability. For that purpose the paper signed "Kemp" was altogether insufficient. It was lacking in the essential particular of parties. The plaintiff then having put into the case the parol evidence mentioned, it seems to me necessarily to follow that the defendants were entitled to introduce the parol evidence offered by them.

Because of the misapplication (as I think) to the defendants' case of the rule excluding parol evidence, I would reverse this judgment and award a new trial.