## TRUCKEE RIVER GENERAL ELECTRIC CO. v. BENNER.

(Circuit Court of Appeals, Ninth Circuit. February 9, 1914.)

No. 2284.

1. COURTS (§ 347*)—AMENDMENT—FEDERAL COURTS—STATUTES.

Amendment of pleadings in federal courts is governed by Rev. St. § 954 (U. S. Comp. St. 1901, p. 696), and not by the laws of the state under the Conformity Act (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

2. APPEAL AND ERROR (§ 959*)—PLEADING (§ 236*)—REVIEW—AMENDMENT OF PLEADINGS.

The allowance or refusal of leave to amend pleadings in actions at law is discretionary with the trial court, the exercise of which is not reviewable except in case of gross abuse of discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3825–3831; Dec. Dig. § 959;* Pleading, Cent. Dig. §§ 601, 605; Dec. Dig. § 236.*]

3. PLEADING (§ 248*)—COMPLAINT—AMENDMENT—NEW CAUSE OF ACTION.

In an action for wrongful death from decedent coming in contact with the lining of a mine entry that had become charged with electricity through the negligent maintenance of defendant's wire outside the entry, the court permitted plaintiff to amend so as to allege that for more than four years prior to decedent's death plaintiff, his father, had emancipated him and surrendered to him all rights to his earnings, and that for more than a year decedent had contributed large sums of money to the support of his brothers and sister, and had he lived he would have continued such contributions. *Held*, that such amendments were not objectionable as setting forth a new and different cause of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 686, 687, 689–706, 708½, 709; Dec. Dig. § 248.*]

4. APPEAL AND ERROR (§ 1004*)—REVIEW—DAMAGES—EXCESSIVENESS.

An objection that the damages allowed were excessive is not reviewable by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

5. COURTS (§ 366*)—INSTRUCTIONS—CONSTRUCTION OF STATE STATUTE.

Where, in an action for wrongful death under a state statute, the court limited plaintiff's recovery, if any, to the actual pecuniary loss or damage which the beneficiaries had sustained from decedent's death, and the instructions conformed to the construction which had been placed on the statute by the highest court of the state, it was not material that the individual view of the trial court as to the construction of the statute did not coincide with that submitted.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

In Error to the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Action by A. S. Benner, as administrator of the estate of Clarence J. Benner, deceased, against the Truckee River General Electric Company. Judgment for plaintiff, and defendant brings error. Affirmed. See, also, 193 Fed. 740.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff in error was the defendant in an action which was brought by the administrator of the estate of Clarence J. Benner to recover damages on account of the death of his decedent. The parties will be designated herein "plaintiff" and "defendant," as they were in the court below. The defendant was engaged in furnishing electrical power to the Charles Butters Company, for use in that company's mine. Clarence J. Benner was working as a miner in the employment of that company. The defendant maintained a pole line with high tension wires, which crossed three or four feet above an iron-covered passageway leading from the mine to a rock breaker. The poles were held by a guy wire, which, during the month of July, 1909, became loosened, in consequence of which the electric wires were slackened and allowed to fall and rest upon the iron-covered passageway, charging the same with a deadly current of electricity. On August 18, 1909, Clarence Benner came out of the mining claim with others, to eat his lunch, sat down within the passageway, and leaned his head and shoulders against the iron covering thereof, and received a severe charge of electricity, causing his death. The plaintiff alleged negligence of the defendant in carelessly, wantonly, and maliciously permitting the wire to touch the covering of the passageway, and thereby to charge the same with a current of electricity. There was evidence that the defendant was warned of the loosening of the guy wire, and of the gradual inclination of the poles in the direction of the passageway, and that they were in danger of touching the same, and that the defendant promised to repair the said line. The deceased was a son of the plaintiff. He was 18 years and 10 months of age, and had never been married. His mother had been dead for several years. The beneficiaries of the cause of action were his three brothers and one sister, to wit, C. E. Benner, 32 years of age, George Benner, 22 years of age, William H. Benner, 20 years of age, and Mrs. Charles Bogle, 25 years of age. The younger two of the brothers and Clarence were residing with their father. The expenses of the home were borne by the three brothers who lived there. Clarence had been working for the Charles Butters Company about 14 or 16 months prior to the time of his death, and had contributed towards the expenses of his father's household between $40 and $50 per month, and there was evidence that he had contributed to his brother William, a minor, when he was out of work or needed money, about $10 or $15 per month, and about $40 or $50 per year for clothing, and that he contributed to his sister Mrs. Bogle about $15 a month in money each month and between $18 and $28 each month for clothing. Clarence was healthy and robust, and worked as a miner, receiving $4 a day. The jury returned a verdict for the plaintiff of $7,000, and judgment was rendered thereon.

Cheney, Downer, Price & Hawkins, of Reno, Nev., for plaintiff in error.

Mack & Green and A. A. Heer, all of Reno, Nev., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is assigned as error that, after the close of the testimony, the court permitted the plaintiff to amend his complaint so as to allege: First, that for more than four years prior to the death of Clarence the plaintiff, as his father, by his acts and conduct had emancipated said Clarence and surrendered to him all rights to his earnings; second, that for more than one year prior to his death Clarence had contributed large sums of money to the support of his said sister and brothers in the sum of at least $50 per month, and that if he had lived he would have continued said contributions. It is said that to allow these amendments was error for the reasons: First, that no affidavit was filed showing good cause therefor as required by section 68 of the Civil

Practice Act of Nevada (Comp. Laws, § 3163); and, second, that the amendment stated a new cause of action. But the trial court was not bound to follow the provision of the Civil Practice Act of Nevada. Although section 914 of the Revised Statutes (U. S. Comp. St. 1901, p. 684) requires the District Courts of the United States in matters of practice, pleadings, and forms, in actions at law, to conform as nearly as may be to the state practice, section 954 of the Revised Statutes (U. S. Comp. St. 1901, p. 696) contains the legislation of Congress on the subject of amendments to pleadings in the federal courts, and is paramount to the local state statute.

[2] It has uniformly been held in those courts that the allowance or refusal of leave to amend pleadings in actions at law is discretionary with the trial court, and that its action is not reviewable except in case of gross abuse of discretion. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Gormley v. Bunyan, 138 U. S. 623, 11 Sup. Ct. 453, 34 L. Ed. 1086; Montana Mining Co. v. St. Louis Min. & Mill Co., 78 C. C. A. 33, 147 Fed. 897; Lange v. Union Pac. R. Co., 62 C. C. A. 48, 126 Fed. 338; Dunn v. Mayo Mills, 67 C. C. A. 450, 134 Fed. 804.

[3] Nor did the amendments which were allowed set forth a new or different cause of action. Neither of the allegations contained in the amendments was an essential element to the statement of the cause of action, although their tendency may have been to enlarge the grounds for the recovery of damages. It is to be observed in this connection that the amendments were not made at the close of the testimony on the trial which is reviewed here, but at the close of the testimony on a former trial of the cause, and that the defendant had answered the same and thereafter had ample time in which to gather testimony concerning the new allegations.

[4] The facts in the case, as well as the argument of counsel, suggest the injustice of permitting the recovery of $7,000 in favor of three able-bodied young men, capable of supporting themselves, and one married sister who is not shown to be in need, for the death of a brother nearly 19 years of age, who was under no obligation to contribute to their support, and probably would soon have married and ceased his contributions. But this court has nothing to do with the question whether the damages were excessive. The jury having fixed the measure of damages, and the court below having refused to set aside their verdict, the only questions for our consideration are whether or not there was error in the admission or exclusion of evidence or in the giving or. denying of instructions to the jury.

[5] The statute of Nevada, providing for the recovery of damages for the death of a person caused by the wrongful act or neglect of another, enacts that, in case there be no lineal descendants or surviving husband or wife, the amount recovered shall be distributed to a surviving brother or sister or brothers or sisters if there be any, and declares that:

"The jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

211 F.—6

The Supreme Court of Nevada, in Christensen v. Floriston P. Co., 29 Nev. 552, 92 Pac. 210, in an action brought to recover damages for the death of a laborer for the benefit of his parents, construed the statute, and held that the amount of the damages must be largely determined upon the questions of relationship and dependency existing between the beneficiary and the decedent, at the time of his death. In that case the jury had awarded a verdict of $10,000. The court said:

"Whether or not $10,000 is a large or a small damage to pay for a human life depends entirely upon the facts of a given case. In one sense no amount of money might compensate for a human life, but the law only looks at the question from the point of actual monetary damage sustained by the person for whose benefit the action is brought, and not that inflicted upon the decedent. * * * We think it may be further said that this pecuniary loss may be either a loss arising from the deprivation of something to which such heirs would have been legally entitled if the person had lived, or a loss arising from a deprivation of benefits which, from all the circumstances of the particular case, it could be reasonably expected such heirs would have received from the deceased had his life not been taken, although the obligation resting on him to bestow such benefits on them may have been a moral obligation only."

And the court in that case in view of the evidence reduced the damages to $3,000.

In the case at bar, the court below, in instructing the jury, told them that they might take into account the amount which it was reasonable to assume the deceased would have contributed to his brothers and sister in money, property, and services had he lived during his and their expectancy of life, and said:

"I further instruct you that, if you find for the plaintiff in this case, then the amount to be fixed by you shall consist only of such pecuniary damages which would be the exact equivalent of the injury, if any, sustained by the brothers and sister of the deceased, as shown by all the evidence in this case, by reason of the death of Clarence Benner. You cannot award the plaintiff in this case exemplary damages by way of punishment or as smart money for defendant's negligence, if any, in causing the death of Clarence Benner," and the court added that the jury were "not to take into consideration any grief or sorrow of the brothers or sister of the deceased, nor any pain or suffering of the deceased caused by any act of negligence of the defendant."

The instructions so given are clearly in harmony with the construction given to the statute of Nevada by the Supreme Court of the state, and guided by those instructions the jury returned its verdict. But counsel for the defendant contend that in ruling upon the motion for a new trial the court expressed a different view of the statute, in saying, after quoting the statute:

"This statute plainly contemplates pecuniary and exemplary damages. Exemplary damages are to be given when the injuries are inflicted willfully and intentionally, or under such circumstances as to be wanton and reckless, and, in awarding damages pecuniary and exemplary, this statute says 'the jury may take into consideration the pecuniary injury resulting from such death to the kindred as herein named.' This would seem to imply pecuniary injury other than that which results to the kindred named, to wit, the value of the life itself, based on the earning power of the deceased and his expectancy of life."

And the court observed that these provisions were not in harmony with the doctrine that the recovery is limited to the actual pecuniary

injury suffered by the kindred named in the statute, nor with the further restricted view that the recovery can be only for the pecuniary injury suffered by that group of kindred in whose behalf the suit is brought. But the court added that the instructions which he had given to the jury were given on the request of the plaintiff, and that whatever his own opinion as to the true interpretation of the statute and the measure of damages recoverable in such cases, he was bound by the instructions given at the request of the plaintiff, and that thereby the amount which could be allowed by the jury was limited to a sum equal to the present value of the money, clothing, and other financial assistance which, had Clarence Benner lived, it is probable he would have given his brothers and sister. In conclusion the court said:

"$7,000 is more than I should have awarded under the instructions, but it is less in my judgment than the pecuniary value of the life of Clarence Benner. However, it is the judgment of the jury, not of the court, as to what is just and fair, which the statute requires."

It is clear from the record of what occurred in the court below that the court in instructing the jury limited the amount that might be recovered to the actual pecuniary loss and damage which the beneficiaries of the suit had sustained from the death of the deceased, and that the instructions conformed to the construction which was placed upon the statute by the highest court of the state, and whatever may have been the individual view of the court as to the true construction of that statute, as indicated in the opinion on the motion for a new trial, it is clear that that view did not affect or even color the instructions which were given to the jury.

Error is assigned to the denial of the defendant's motion for a new trial; the contention being that the well-settled rule, universally recognized in the federal courts, that the denying or granting of a motion for a new trial rests in the discretion of the trial judge, and is not reviewable on writ of error, is not applicable here, for the reason that the action of the court below in denying the motion was influenced by an erroneous construction of the statute, or, in other words, that the court believed the verdict to be excessive but allowed it to stand for the reason that in his opinion the statute allowed a broader ground of recovery than was indicated in the decision of the Supreme Court of Nevada. But the record does not sustain this contention. The remark of the judge that $7,000 was more than he would have awarded under the instructions does not mean that he deemed that sum excessive. It meant no more than to say that, while the minds of reasonable men might differ as to the amount of damages recoverable under the instructions as they were given to the jury, the court's own judgment was that the amount of the verdict should have been less. But the language of the opinion clearly indicates that the court regarded the verdict as having been rendered in accordance with the instructions given, and that the jury were controlled thereby, and it is not fairly deducible from anything said therein that a new trial would have been granted but for the court's own opinion that damages were recoverable on broader grounds than as stated in Christensen v. Floris-

ton P. Co. This is shown by the reference to the Christensen Case, of which the court said:

"If $3,000 was a reasonable amount to be awarded in the Christensen Case, it could not well be said that $7,000 in the Benner Case was so excessive that it must have been rendered under the influence of passion or prejudice."

There are other minor assignments of error which are not of sufficient merit to require any extended discussion. It is sufficient to say that we find no error in any of them.

The judgment is affirmed.