## AMERICAN MILLS CO. v. HOFFMAN et al.

(Circuit Court of Appeals, Second Circuit. July 6, 1921.)

No. 124.

1. **Courts ⬅340—Amendment in federal courts governed by federal statute.**
    The conformity statute (Rev. St. § 914 [Comp. St. § 1537]), does not apply to amendment of pleadings in a federal court which is governed by Rev. St. § 954 (Comp. St. § 1591), providing that a federal court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe," though the power to permit amendments is incidental to the judicial power.

2. **Pleading ⬅249(1)—Amendment on trial changing form or nature of action not allowable.**
    A plaintiff may not be allowed on the trial to amend his pleading to change the form or nature of the action so as to require different proof or a different measure of damages.

3. **Appeal and error ⬅1031(2)—Pleading ⬅249(4)—Permitting amendment changing cause of action held error, and error presumed prejudicial.**
    Permitting a plaintiff at the close of the evidence to amend his complaint, which was for goods sold and delivered, by changing it to one for breach of contract for refusal to accept the goods after shipment, which under the statute required wholly different proof, and reopening the case to allow plaintiff to introduce new evidence, *held* error, presumably prejudicial to defendant.

4. **Appeal and error ⬅1043(5)—Permitting questions calling for irrelevant testimony held error though negative answer was given.**
    On an issue as to the right of defendant to cancel an order for goods given to plaintiff, evidence that defendant attempted to cancel orders given to others was irrelevant, and permitting questions on cross-examination of defendant's witnesses calling for such evidence, though the answers were negative, *held* prejudicial error.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by George F. Hoffman and Peter H. Corr, partners as the Hoffman-Corr Manufacturing Company, against the American Mills Company. Judgment for plaintiffs, and defendant brings error. Reversed.

This cause comes here on writ of error to the United States District Court for the Southern District of New York. The defendant in error, plaintiff below, is hereinafter called plaintiff. The plaintiff in error, defendant below, is hereinafter called defendant.

The plaintiff was and is a copartnership engaged in business in the city of New York. The defendant is a corporation organized under the laws of the state of Georgia, and maintains its offices in Atlanta, in that state. It is engaged in the purchase and sale of twines and cordage. The plaintiff was represented in Atlanta by Francis B. Florence, a merchandise broker, who received from the plaintiff the following letter dated October 9, 1918:

"Dear Sir: Answering your favor of the 5th instant with order inclosed for 25,000 lbs. of Lion Mills Thrush brand twine #1200, Mr. Florence, the goods are put upon spools as per the one sent you. Therefore, if you will send us the order for 25,000 lbs. at 30c per lb. f. o. b. New York City 2% 10 days net 30, subject to no freight allowance or carrying charges of any kind, price 30c per lb. for #1200 Thrush brand paper twine put up on spools weighing about 5 lbs. each, to be shipped as fast as we can produce it at our mill,

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which would be anywhere from two to eight weeks to complete the order, barring any unforeseen conditions that might arise, we will enter same. Let order come forward at once, please. The goods are usually put up in cases."

Florence then called on defendant and received from them an order for 25,000 pounds of brown paper twine at 30 cents per pound. This order he sent to the plaintiff at New York, and in response received the following reply, dated October 19, 1918:

"[Letter head of Hoffman-Corr Mfg. Co.]

"10/19/18.

"Mr. F. B. Florence, 303 Peters Bldg., Atlanta, Ga.—Dear Sir: We are in receipt of order from the American Mills Co., Atlanta, their order for 25,000 lbs. of brown paper T's as per sample 5 lb. fiber spool, at 30c per lb. We wish to make no mistake on this order and ask if it is #1200 as per sample inclosed herewith, that is to be shipped. Also note that we have not as yet entered said order, for there are some clauses on the customer's order, to which we could not agree. One of them reads, 'This order subject to cancellation for causes beyond buyer's control and reimbursing buyer for loss including profits,' etc. These are conditions which we would not care to agree to. In other words, the sale we will make must be a bona fide one, not subject to any cancellation of any kind. We certainly are not going out after the customer's trade. You may assure him of that, but we are not going to take on any orders, under present strenuous business conditions, subject to cancellation, under any circumstances. Let us hear from you so that we may proceed with the order.          [Signed]  Hoffman-Corr Mfg. Co."

The broker took this letter to the defendant, who under date of October 22, 1918, wrote the plaintiff as follows:

"Mr. Florence has shown us your letter addressed to him under date of October 19th, having reference to our order for 25,000 pounds of brown paper twine.

"However, he advised that the sample which you advised was being inclosed was not inclosed.

"In consequence of which we attach hereto a small sample of the twine submitted by your Mr. Florence representing the #1200 Thrush twine, or brown paper twine, and against which we placed our order.

"This, you will notice, is a very small twine made of paper of a width of probably $9/16$ to $5/8$ inch in a basis weight of about 20 to 25 pounds.

"If for any reason your understanding varies from this do not fail to advise us immediately.

"We also note the exceptance you take in several of the terms mentioned in our order, that is, order being subject to cancellation for cause beyond the buyer's control, etc., and would say that it is agreeable to us for you to eliminate these conditions on the order in question.

"Do not fail to advise us relative to the inclosed sample immediately and oblige."

The plaintiff replied on October 25, 1918, as follows:

"We are in receipt of your favor of the 22d instant relative to your order for 25,000 lbs. of brown paper twine. We note that #1200 is what is desired. We shall, therefore, proceed with the order, with the understanding that, as per your agreement in said letter of the 22d, clauses we mentioned in our previous letter shall be eliminated. We are going to ship #1200 Thrush brand twine, eliminating the clauses in question, and thank you for your order."

On October 28, 1918, plaintiff wrote defendant that New York City would be the point of shipment, and asked that shipping instructions be immediately forwarded. On November 1, 1918, the defendant instructed the plaintiff to deliver the twine to the Harris Warehouse in New York City.

On December 14, 1918, plaintiff made a delivery of six cases to the above warehouse, and forwarded to defendant at Atlanta copies of invoices purporting to cover the contents of the same. These invoices having reached defendant, and on January 2, 1919, the defendant wrote to the plaintiff as follows:

"We note your invoice dated December 14th, covering six cases of Thrush twine delivered to the Harris Warehouse.

"We presume that this is against our order for a quantity of these goods, which was to be delivered immediately.

"A reference to our records shows that practically all orders which we had against this have been canceled, due to our failure to deliver, so of course we would have no alternative except to effect cancellation with you.

"It will be satisfactory for us to accept delivery on these six cases, as we do not doubt but what we can get rid of same, but we can accept them only with the understanding, of course, that the balance will be canceled.

"Kindly advise us immediately with regard to same to the end that we may know whether we can take in the six cases or not.

"Awaiting your prompt advice, we are."

At the same time defendant wrote to the Harris Warehouse, instructing the warehouse not to take any of the goods in for defendant's account.

On January 4, 1919, plaintiff wrote defendant saying:

"We have your favor of the 12th (2d) instant with regard to our invoice of Dec. 14, for Thrush brand twine. We note your letter with great surprise. We have already shipped from mill on that 25,000-lb. contract (please refer to your letter of Oct. 11th, contract #F–188), on the 14th ult., 2,677 lbs., and there is in transit from the mill about 5,000 lbs. more, and we cannot, under any circumstances, accept cancellation on the order."

On January 28, 1919, defendant wrote plaintiff as follows:

"We return you herewith invoices for 'Thrush' twine, and desire to state that this order has been canceled.

"If you recall, when we sent you settlement the last shipment, it was sent with the distinct understanding that it would cancel all contracts of every kind and nature, and we hold your receipt to this effect.

"We cannot handle any of these goods, and we will thank you to have them removed, and if they are stored at the Harris Warehouse they are stored there for your account.

"As stated, please investigate this matter, and oblige."

Various letters thereafter passed back and forth between the parties, and in the meantime the plaintiffs continued to ship cases of twine to the warehouse until February 20, 1919, when the final shipment was made. And on March 10, 1919, defendant sent a telegram to plaintiff rejecting all the merchandise. The plaintiff shortly thereafter brought this action, and levied an attachment upon the twine at the warehouse.

The complaint alleged the making of the contract, and that the plaintiffs had duly performed all the conditions thereof on their part. The answer admitted the making of the contract, but denied that it was correctly set forth. It also denied the performance alleged by plaintiff, and denied indebtedness to plaintiff. In addition the defendant set up as an affirmative defense a breach of the agreement in that the goods did not conform with the description contained in the letter of October 22d, heretofore recited. At the close of the entire case and before it was sent to the jury defendant moved to dismiss on the following grounds:

First. That shipments were not made within the time agreed upon.

Second. That the twine was not put up on five pound fibre spools.

Third. That 25,000 pounds of twine had not been delivered or tendered.

Fourth. That there was no proof of what quantity had been delivered or tendered.

Fifth. That deliveries were made in installments which was contrary to section 126 of the Personal Property Law of the state of New York (Consol. Laws, c. 41).

Sixth. That, as required by section 144 of the Personal Property Law of the state of New York, there was no proof that the goods could not, at the times of rejection, have been readily resold for a reasonable price, and no proof that the plaintiffs had sent the notice required by that statute.

After defendant had made these motions, the court requested counsel for the plaintiffs to discuss the various propositions raised thereby. As a result of this discussion the court ruled that the plaintiffs had failed to satisfy the statutes relied on by the defendant in its motions to dismiss, holding that the

plaintiffs had not shown delivery after the first shipment of six cases on December 14, 1918, and had not otherwise proven a compliance with the statute.

Plaintiffs' counsel thereupon moved to amend the complaint, to change the cause of action from goods sold and delivered to breach of contract for failure on defendant's part to accept the goods after the shipment of December 14th, basing his amendment on section 144, subd. 3, of the Personal Property Law of New York. He then asked leave to have the record reopened and for permission to introduce new proof to support the amendment. These motions were granted over the objection and exception of defendant, and defendant was directed to proceed with its defense to the new complaint, over its plea of surprise and its request for leave to withdraw a juror.

Further testimony was taken, and at the close of the case defendant again renewed its motions to dismiss. These were denied, and the case was submitted to the jury, a verdict was returned for 21,718½ pounds at 30 cents per pound, making a total of $6,515.55, which with judgment was entered on April 3, 1920, for $6,930.25, together with $76.12 costs as taxed, making in all the sum of $7,006.37.

Henry Uttal, of New York City (Ely Neumann, of New York City, of counsel), for plaintiff in error.

John B. Doyle, of New York City, for defendants in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). At the close of the entire case, after both the plaintiffs and defendant had put in their testimony and rested, the defendant renewed motions made at the close of the plaintiffs' case and asked the court to dismiss the complaint on the ground that the plaintiffs had failed to make out their cause of action in that they had not shown that they delivered the quantity of twine called for in the contract. There were other grounds also assigned, as that they had not made delivery within the time required by the contract, or in the manner required by the contract, but by installments. The court denied the motions, and then asked the plaintiffs' counsel whether he desired to amend the complaint. Counsel replied that he certainly did, whereupon the court declared that he would give permission to amend. The court then informed the plaintiffs' counsel that he should move to reopen his case and to amend. This the counsel did. Then the court said:

"And I suppose you wish to ask damages for the value of the goods you may have proved to have been actually delivered, and the difference between the contract price and the market price of any other goods, the delivery of which you tendered?"

Counsel answered that he did. This happened at the close of the Friday afternoon session. Counsel handed to defendant's counsel the amended complaint on Saturday. On Monday morning defendant put in his amended answer, and the trial proceeded. The plaintiffs called three new witnesses whose testimony covers 33 printed pages of the record and recalled one other witness, and the examination of the four occupied the entire morning session of the court. At the afternoon session defendant recalled its three former witnesses who were examined and cross-examined, the judge charged the jury, and the verdict was returned on that day. The defendant claims that it was seriously prejudiced. It was a Georgia corporation with offices in

Atlanta, and had in court at that time its president and the man who had negotiated the contract. They came from Georgia for the purpose of testifying, and brought with them such records as their counsel instructed them to bring to meet the issues presented by the original complaint. They allege they had no witnesses in court on the issues presented by the amended pleadings, and that they were able to make no preparations to meet the issues the new complaint raised.

The permission to amend was granted over defendant's objection. The grounds of objection as stated by its counsel were surprise and the fact that the amendment stated a different cause of action. The defendant asked to be allowed to withdraw a juror, and this was refused.

It is held in New York that after trial pleadings cannot be conformed to the proof. Northam v. Dutchess County Mutual Insurance Co., 177 N. Y. 73, 75, 69 N. E. 222. But in the instant case the amendment, as we have seen, was made after the parties rested and before the case was submitted to the jury, and opportunity was given to introduce new testimony to meet the changed issues.

The cause of action as originally set forth in the complaint was for goods sold and delivered. It is claimed that the effect of the amendment was to change the cause of action from one for goods sold and delivered to one for breach of contract for failure on defendant's part to accept the goods after shipment.

An action for goods sold and delivered can be maintained only when the contract is fully executed on the part of the seller. Hyde v. Liverse. 12 Fed. Cas. p. 1112, No. 6972. If he has not fully performed, then his action should be for goods bargained and sold. Atwood v. Lucus, 53 Me. 508, 89 Am. Dec. 713; Allman v. Davis, 24 N. C. 12. But if the title remains in the seller the action is on the special contract. Shepard v. Mills, 173 Ill. 223, 50 N. E. 709. The rule is stated in Saunders on Pl. & Evid. 536, that, to support an action for goods sold and delivered, the plaintiff must prove, not only such a delivery as will vest the property in the goods in the defendant, but such a delivery as will divest himself of all lien upon the goods, and enable the defendant to maintain trover for them without paying or offering to pay for them.

The law is well settled that, where the contract has been performed and nothing remains to be done but to pay the amount due under it, a recovery may be had under the common counts. But the plaintiff's evidence made out no such case, and it was thought by court and counsel to be necessary to amend the complaint. It was accordingly amended that damages might be recovered because of defendant's failure to accept the goods. The amendment was based upon and intended to set forth a cause of action under section 144, subd. 3, of the Personal Property Law of the state of New York, which provides as follows:

"3. Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of section one hundred and forty-five are not applicable, the seller may offer to deliver the goods to the buyer, and if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price." 40 McKinney's Cons. Laws of New York, 236.

The proof required to support the amendment was different from that required under the original complaint. Under the amendment it was incumbent upon plaintiffs to prove:

(1) The sale.

(2) Performance by plaintiffs.

(3) The breach by defendant.

(4) Damages, which, if the goods were readily resalable for a reasonable price, would be the difference between that price and the contract price.

(5) If the goods were not readily resalable for a reasonable price, that plaintiffs had notified the defendant that they would thereafter hold the goods as bailee for the defendant, and thereupon the measure of damages would be the contract price.

As the original complaint was for goods sold and delivered, the evidence required to support it was:

(1) Proof of the sale.

(2) Proof of delivery of the goods.

(3) Proof of due performance by plaintiffs of all conditions of the sale contract.

(4) Proof of nonpayment by defendant.

This proof the plaintiffs had failed to produce.

The New York courts in construing this statute have uniformly held that to maintain the action under it the plaintiff must show affirmatively:

(a) That the goods could not readily be resold for a reasonable price.

(b) Notifications by the seller to the buyer that the goods were thereafter held by the seller as bailee for the buyer. Mindlin v. Freydberg et al., 171 N. Y. Supp. 250; Mosler Safe Co. v. Brenner, 100 Misc. Rep. 107, 165 N. Y. Supp. 336; Crown Electric Ill. Co. v. Chiariello, 106 Misc. Rep. 511, 175 N. Y. Supp. 167.

[1] The power of a court to allow the amendment of pleadings is incidental to the exercise of the judicial power. In Tilton v. Cofield, 93 U. S. 163, 166, 23 L. Ed. 858, the court declared that—

"Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice. Usually, to permit or refuse, rests in the discretion of the court; and the result in either case is not assignable for error." .

And in Standard Bitulithic Co. v. Curran, 256 Fed. 68, 70, 167 C. C. A. 310, 312, we declared that—

"Courts, in the exercise of their common-law jurisdiction, may in their discretion permit pleadings to be amended at any time before verdict, if such amendment does not surprise or prejudice the opposite party."

An amendment which changes a cause of action would ordinarily surprise and prejudice the opposite party and not meet the test there laid down.

Revised Statutes of the United States, § 954 (Comp. St. § 1591), provide that a federal court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe." The words quoted

may be found in the Judiciary Act of 1789, which established the federal courts. Stat. at L. vol. 1, c. 20, § 32, p. 91. The power of a federal court to amend pleadings has existed from the beginning and exists independently of any state statute.

The Revised Statutes provide in section 914 (Comp. St. § 1537) that the practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, shall conform in the federal courts as near as may be to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which the federal courts are held. It is to be observed, however, that as respects the amendment of pleadings the federal courts are not controlled by the Conformity Act (Comp. St. §§ 6817, 6818), and are not subject either to the local state law or to the state practice. Where Congress has legislated specifically upon a subject, such as that of the amendment of pleadings, the power of the federal courts in that particular matter is to be exercised under the act of Congress, and not under the local statutes. Bowden v. Burnham, 59 Fed. 752, 8 C. C. A. 248; Lange v. Union Pacific R. Co., 126 Fed. 338, 340, 62 C. C. A. 48, certiorari denied 193 U. S. 671; [1] De Valle da Costa v. Southern Pacific Company (C. C.) 167 Fed. 654; Truckee River General Electric Company v. Benner, 211 Fed. 79, 127 C. C. A. 503. See, also, Silvas v. Arizona Copper Co. (C. C.) 213 Fed. 504, 506.

[2] In what is hereinafter said in reference to the New York cases we are not to be understood as resting our decision upon the authorities of the local state, but are using them as good illustrations of fundamental principles adhered to by courts generally in the exercise of the power to amend with which courts are invested. The principle announced in those cases is simply conformable to the general rule that no amendments can be allowed which change the form or nature of the action. Stevenson v. Mudgett, 10 N. H. 338, 34 Am. Dec. 155; Thyssen v. Davenport Ice, etc., Co., 134 Iowa, 749, 112 N. W. 177, 13 L. R. A. (N. S.) 572; Flanders v. Cobb, 88 Me. 498; Barnes v. Gibbs, 31 N. J. Law, 317, 86 Am. Dec. 210; Allen v. Tuscarora Valley R. Co., 229 Pa. 97, 78 Atl. 34, 30 L. R. A. (N. S.) 1096, 140 Am. St. Rep. 714; Charmley v. Charmley, 125 Wis. 297, 103 N. W. 1106, 110 Am. St. Rep. 827; Connecticut Fire Ins. Co. v. Monroe Circuit Judge, 77 Mich. 231, 43 N. W. 871, 18 Am. St. Rep. 398; Heidel v. Benedict, 61 Minn. 170, 63 N. W. 490, 31 L. R. A. 422, 52 Am. St. Rep. 592; Montgomery First National Bank v. Chandler, 144 Ala. 286, 32 South. 822, 113 Am. St. Rep. 39; Baldwin v. Western Union Telegraph Co., 93 Ga. 692, 21 S. E. 212, 44 Am. St. Rep. 194.

New York Code of Civil Procedure, § 723, provides as follows:

"The court may, upon the trial, * * * amend any process, pleading, or other proceedings * * * where the amendment does not change substantially the claim or defense, by conforming the pleading or other proceedings to the facts proved. And, in every stage of the action, the court must disregard an error or defect, in the pleadings or other proceedings, which does not affect the substantial rights of the adverse party. * * * *"

While there is great power of amendment under the New York Code, the amendment cannot bring in a new cause of action. In Reeder v.

[1] 24 Sup. Ct. 853, 48 L. Ed. 841.

Sayre, 70 N. Y. 180, 190, 26 Am. Rep. 567, the court allowed the complaint to be amended by alleging that the plaintiffs sued in their character as surviving partners instead of tenants in common as this did not change the cause of action. "That," said the court, "remained the same, and required no different proof and no additional parties."

In Wright v. Delafield, 25 N. Y. 266, 269, Judge Smith, writing for the court, in speaking of the rules allowing affirmative relief upon the pleadings, expressed his opinion that it was—

"quite problematical whether the relaxation of this rule which has been introduced under the Code in modern practice will not involve and produce much greater confusion and mischiefs than it will remedy."

He then went on to say:

"It is true that the courts are more liberal than formerly in making or allowing amendments of pleadings, and when the substantial rights of the parties have been fairly tried, trifling variances are disregarded, and judgment given according to the real right of the case as established. Corning v. Corning, 2 Seld. 97; Hall v. Gould, 3 Kern. 127; 28 Barb. 441–602; 33 Id. 238.

"But these cases assume, and this right of disregarding variances proceeds upon the ground, that the substantial rights of the parties are set up in the pleadings, and section 169 forbids amendments where the party will be misled or surprised. * * * Parties go to court to try the issues made by the pleadings, and courts have no right impromptu to make new issues for them, on the trial, to their surprise or prejudice, or found judgments on grounds not put in issue, and distinctly and fairly litigated."

The courts of that state, as elsewhere, adhere to the fundamental rule that a judgment shall be secundum allegata et probata, and they have declared that any departure from that rule is certain to produce surprise, confusion, and injustice. They have said with much force that pleadings and a distinct issue are essential in every system of jurisprudence, and that there can be no orderly administration of justice without them.

"If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary." Brightson v. Claflin Co., 180 N. Y. 76, 81, 72 N. E. 920, 921; Southwick v. First National Bank of Memphis, 84 N. Y. 420, 428, 429.

In Walrath v. Hanover Fire Insurance Company, 216 N. Y. 220, 110 N. E. 426, the complaint alleged that defendant had insured the plaintiff's buildings against fire and then attempted wrongfully to cancel the contract. At the close of the entire evidence the trial court permitted the plaintiff over the defendant's objection to amend the complaint by inserting therein allegations to the effect that defendant agreed to deliver the policy of insurance and had failed and neglected to perform that agreement. This was held reversible error, and a judgment for the plaintiff was reversed. The court held the amendment changed substantially the claim made in the complaint, which was error. And it was held also to be error to allow an amendment to be made at a time which did not allow the defendant an opportunity to meet by proof the allegations made against it. The original complaint alleged an executed contract of insurance. The amended complaint alleged an executory contract. The court said:

"It is fundamental that in civil actions the plaintiff must recover upon the facts stated in his complaint, or not at all. In case a complaint proceeds on a definite, clear, and certain theory, it will not support or permit of another theory because it contains isolated or subsidiary statements consistent therewith. A party must recover not only according to his proofs, but according to his pleadings."

In New York the courts have no power so to amend a complaint as to change the cause of action. Walrath v. Hanover Fire Ins. Co., 216 N. Y. 220, 110 N. E. 426; Dexter v. Ivins, 133 N. Y. 551, 30 N. E. 594; Southwick v. First National Bank of Memphis, 84 N. Y. 420, 428; Balch v. Wurzburger, 9 Misc. Rep. 74, 29 N. Y. Supp. 62; Dows v. Morrison, 2 Misc. Rep. 54, 20 N. Y. Supp. 860.

In Moniot v. Jackson, 40 Misc. Rep. 197, 81 N. Y. Supp. 688, a complaint charged trustees with negligence, and after the proof was in the plaintiff was allowed to amend his complaint to conform with the proof and charge a nuisance. The court held this could not be done for it clearly changed the action from one cause to another.

And a complaint under a contract of employment for salary cannot be changed into an action for damages for breach of the employment contract. Balch v. Wurzburger, supra.

In Zboynski v. Brooklyn City R. R. Co., 10 Misc. Rep. 7, 30 N. Y. Supp. 540, the judgment below was reversed because of an amendment made in the complaint at the trial. The court said:

"The court upon the trial is not authorized to allow an amendment which substantially changes the claim or defense * * * and the amendment was not only a substantial change of the claim, but was the substitution of another cause of action for the one pleaded, and that is forbidden by the law at the trial, notwithstanding the broad discretion confided to courts in the matter of liberal amendments."

It has been held that, in determining whether the modification of a complaint is a substitution of a new cause of action, two facts must be ascertained:

(1) Will the same evidence support both complaints?
(2) Will the same measure of damages apply to each?

It is said that both questions must be answered in the affirmative to hold the modification a proper one. Liese v. Meyer, 143 Mo. 547, 555, 556, 45 S. W. 282; Ross v. Mineral Land Co., 162 Mo. 317, 331, 62 S. W. 984; Jacobs v. Chicago, Peoria & St. Louis R. Co. (Mo. App.) 204 S. W. 954 (1918).

[3] From what has been already said it has been made evident that in the instant case the same evidence will not support the original and amended complaints. After the amendment was made in order to support the amended complaint it was necessary to reopen the case and allow the plaintiff to call new witnesses and to introduce entirely new testimony. The original claim had been changed in a "substantial" manner, and in doing so the court exceeded its authority.

It is no answer to say that the defendant was not harmed by what was done. We have no right to speculate upon that question. But it is by no means clear that he was not seriously prejudiced. In Southwick v. First National Bank of Memphis, supra, the action alleged and the cause of action proved at the trial differed. It was said that the

defendant had probably not been misled. Judge Earl, writing for the New York Court of Appeals, referring to this, declared that it was no answer. He said:

"A defendant may learn outside of the complaint what he is sued for, and thus may be ready to meet plaintiff's claim upon the trial. He may even know precisely what he is sued for when the summons alone is served upon him. Yet it is right to have a complaint, to learn from that what he is sued for, and to insist that that shall state the cause of action which he is called upon to answer, and when a plaintiff fails to establish the cause of action alleged the defendant is not to be deprived of his objection to a recovery by any assumption or upon any speculation that he has not been injured."

[4] It is proper for us to add that it was prejudicial error to admit testimony that the defendant had placed certain orders with the Worth & Dyke Manufacturing Company, of Richmond, Va., and that after the armistice it had attempted to cancel them. The defendant's witness Miller was asked and reasked again and again after he had said he knew nothing about it and over the objection of counsel whether the defendant had not asked the cancellation of the orders. The same question was put to defendant's witness May. This had no bearing upon the issue, and was clearly irrelevant and immaterial. It was calculated to prejudice the jury against the defendant and to leave an impression on their minds that the defendant was lacking in due regard of its contractual obligation.

The judgment is reversed, and a new trial ordered.