[Civ. No. 130.   First Appellate District.—January 10, 1906.]

YICK SUNG, Respondent, v. HERMAN et al., Doing Business Under the Name of ERLANGER & GALINGER, Appellants.

SALE—PASSING OF TITLE — SEGREGATION AND DELIVERY.—A written agreement acknowledging the receipt of part payment for two thousand sacks of potatoes, at a stipulated price per sack, "delivered f. o. b. on Bank, all of which goods I have this day sold," signed by the purchaser and seller, amounts to a sale and not a contract of sale, and the title to the goods passed to the purchaser as soon as the seller had segregated, sacked and delivered the potatoes at the river bank.

ID.—EVIDENCE—FINDING.—The evidence reviewed and held sufficient to sustain the finding that the plaintiff delivered the potatoes to the defendants at the time and place and in the condition agreed upon, and that the defendants received and accepted the same on the bank of the river.

ID.—EVIDENCE OF QUALITY.—Where issue is raised by the defendants as to the quality of the potatoes delivered, a witness for the plaintiff may testify that he saw the plaintiff digging and sacking potatoes of good quality about the time of the deliveries to the defendants, when there is other evidence that the potatoes all came from the same field, and were all about the same in quality.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

J. B. Reinstein, and W. P. Johnson, for Appellants.

A. B. Treadwell, and Morehouse & Alexander, for Respondent.

COOPER, J.—Action to recover $854 for two thousand and twenty sacks of potatoes alleged to have been sold by plaintiff to defendants at the following prices: Twenty sacks at forty-five cents per sack, and two thousand sacks at forty-two and a half cents per sack.   The court found for plaintiff, and judgment was accordingly entered.   This appeal is from the judgment on the judgment-roll and a bill of exceptions.

The appellants contend that the evidence is insufficient to support the findings, and show that the potatoes were not up to the quality specified in the contract. The main discussion is as to whether or not the contract was a present sale by which the title passed, or an agreement to sell in future. The contract is as follows:

"Contract.

"Received from Erlanger & Galinger, the sum of five dollars as part payment for the following described goods, viz: 2,000 sacks B Bank at 42½ per sack, delivered f. o. b. on Bank, all of which goods I have this day sold to said Erlanger & Galinger, at the above prices on the following conditions: All goods to be sound and merchantable, of fancy quality, on arrival at San Francisco. Sacks to be well filled and in good shipping order. Said Erlanger & Galinger agree on their part to pay balance of purchase price on the receipt of the bill of lading for said goods, shipped in accordance with the above terms and conditions, and as specifically described. Sack 115 lbs. Yick Sung, Seller. Erlanger & Galinger, Buyer, per F. Eshbach. Contract executed in duplicate. Dated November 20, 1902."

The court found: "That it was intended, and so understood by and between plaintiff and defendants, that the said transaction was a sale and not a contract." We are of opinion that the agreement was a sale, by which the title passed from the plaintiff to the defendants when the potatoes were sacked and delivered to defendants on the "Bank" as specified in the agreement. The agreement acknowledges the receipt of $5 as part payment for "2,000 sacks B Bank at 42½ per sack, delivered f. o. b. on Bank, all of which goods I have this day sold to said Erlanger & Galinger." The words "this day sold" mean a present sale. Of course, there remained something to be done. The plaintiff had to segregate, sack and deliver at the river bank all of said two thousand sacks of potatoes that were not already at the bank; but when the plaintiff had done this the title passed, and the potatoes, when so delivered, were the property of defendants. The authorities all hold that where the terms are expressed in a contract of sale by which a present sale is contemplated, and the articles or goods are delivered to the buyer at the place designated in the contract, the title vests in the buyer. Even

in an executory contract of sale of articles to.be selected from goods in bulk, when the articles or goods are selected and appropriated to the contract and delivered to the buyer, the title passes. A sale is a contract by which, for a consideration, one transfers to another property or an interest therein. Segregating the articles and setting them apart to the vendee by way of delivery fixes the responsibility upon the vendee to pay. The buyer must pay the price agreed upon by the terms of the contract when the goods are delivered. Of course, if the goods, although delivered, are not up to the specifications called for by the contract the vendee has his remedy by way of recoupment in damages when sued for the price. The evidence shows that "B Bank" meant Burbank potatoes, and that "on Bank" meant on the landing at the bank of the San Joaquin river. Our inquiry will then be directed to the question as to whether or not the evidence is sufficient to sustain the finding of the court that "plaintiff delivered to defendants at the time and place and in the conditions agreed upon the said two thousand sacks, and that the said defendants received and accepted the same on the bank of the river."

The question is not free from difficulty, and there is much conflict in the evidence, but after a careful examination of the evidence we are of opinion that it supports the finding. There is evidence that one Eshbach was the agent of defendants for the purpose of making the purchase of the potatoes; that as such agent he examined and purchased the first lot of twenty sacks, and shipped them to defendants, and they received them without objection, and there is no controversy here as to the twenty sack lot; that Eshbach was an experienced buyer and lived near the farm of plaintiff and had been upon it often; that when the contract for the two thousand sacks was entered into about four hundred and sixty-five sacks had been dug, of which one hundred sacks were at the landing and the balance in the field where plaintiff was engaged in digging; that Eshbach inspected these sacks and went into the field and examined the kind and quality of the potatoes that were being dug; that the remaining portion of the two thousand sacks was dug from the same field, and was equal in quality and similar to the four hundred and sixty-five sacks which Eshbach examined, and the twenty sacks of the

first lot; that the potatoes were purchased as river Burbank potatoes, which are much inferior to the highland Burbank potatoes, and sell for a much less price; that the price at which the two thousand sacks were sold was much less than the selling price of "Highland Burbank" potatoes at the time; that Eshbach was upon and around plaintiff's farm when the balance of the two thousand sacks was being dug, sacked and shipped, and made no objection to the quality; that the common carrier received the potatoes at the river landing, and shipped them to. defendants, who paid the freight upon them. The witness McMillan testified that he lives about a fourth of a mile from plaintiff's farm, and that he saw the potatoes when they were being dug and sacked; that they were river Burbanks in good condition, that the land is of the same character throughout the field, and that the potatoes were dug, not from one part, but across the field. The witness Adams testified that he examined four hundred and sixty-four sacks of potatoes on the Jackson street wharf after they had arrived in San Francisco; that he also examined the first shipment of twenty sacks, and found them exactly the same; that the potatoes were fancy first-class, but not extra.

The defendants did not rescind the contract, or notify the plaintiff not to deliver the potatoes. The plaintiff testified that he heard not a word of objection to the potatoes until he came to San Francisco to get his money. The principal objection made by the defendants to the potatoes is that they were uneven in size and watery, with soft ends. In view of the fact that the potatoes were purchased as river Burbanks; that the agent saw them when he was purchasing them; that they were of the same quality as the twenty sacks of the first purchase; that they were received by the agent and shipped to defendants, we think the court was justified in its findings. Of course, all presumptions here are in favor of the trial court, and a finding of fact must not be set aside when there is substantial evidence in its support.

The court did not commit error in overruling defendants' objections to questions asked of the witness McMillan for the purpose of showing that he saw plaintiff digging and sacking potatoes between November 20 and December 1, 1902, and that the condition of the potatoes he saw was good. In view of the

fact that there was testimony tending to show that the land was all of about the same quality, and the potatoes all about the same, the evidence was competent.  It was about the time that plaintiff was digging and delivering the potatoes to defendants.  We find no other question necessary to be discussed.

The judgment is affirmed.

Harrison, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 9, 1906, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 8, 1906, and the following opinion was then rendered:

The COURT.—The opinion of the district court of appeal appears to hold that under the terms of the contract of sale the title to the potatoes sold passed when they were sacked and delivered to the buyers on the "bank," and that they became property of the buyer at that time, instead of at the time when they arrived in San Francisco.  Without expressing any opinion on the proper construction of the contract in this respect, we think the judgment of the superior court was properly affirmed upon the other grounds stated in the opinion of the district court.  The application for an order transferring the   cause to the supreme court is therefore denied.