**FERGUSON, Collector, v. DICKSON et al.**

(Circuit Court of Appeals, Third Circuit. August 19, 1924.)

No. 3128.

1. **Internal revenue ⬤⟐8—Transfer of securities by decedent held "sale" for fair consideration, within exception from estate tax.**

Transfer by decedent of securities to trustee for benefit of intended wife, in consideration of wife's surrender of inchoate right of dower, by agreement postponing possession and enjoyment until after his death, *held* "sale," within exception from estate tax imposed by Revenue Act 1918. § 402 (c), being Comp. St. Ann. Supp. 1919, § 6336¾c, in such case of "bona fide sale for fair consideration in money or money's worth."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

2. **Internal revenue ⬤⟐8—"Fair consideration," within exception from estate tax of transfer by decedent for such consideration, construed.**

A "fair consideration," within Revenue Act 1918, § 402 (c), being Comp. St. Ann. Supp. 1919, § 6336¾c, excepting from estate tax interest transferred to take effect in possession or enjoyment after transferror's "death," in case of bona fide sale for "fair consideration in money or money's worth," is consideration which under all circumstances is honest, reasonable, and free from suspicion, whether or not strictly "adequate" or "full."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Fair Consideration.]

3. **Internal revenue ⬤⟐8—Inchoate right of dower held "money's worth," within exception from estate tax of sale by decedent for money's worth.**

Inchoate right of dower is the wife's separate property, and has pecuniary value, and is "money's worth," within exception from estate tax imposed by Revenue Act 1918, § 402c (Comp. St. Ann. Supp. 1919, § 6336¾c), of sale by decedent for fair consideration in money's worth.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Money's Worth.]

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by Thomas Dickson and others, as executors of the last will and testament of Joseph B. Dickson, deceased, against Frank C. Ferguson, Collector of Internal Revenue for the Fifth District of New Jersey. Judgment for plaintiffs, and defendant brings error. Affirmed.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., Walter H. Bacon, Jr., Asst. U. S. Atty., of Bridgeton, N. J., and Thomas H. Lewis, Jr., and Nelson T. Hartson, both of Washington, D. C., for plaintiff in error.

Cullen & Dykman, of New York City (Thomas G. Haight, of Jersey City, N. J., of counsel), for defendants in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

DAVIS, Circuit Judge. This is an action brought by the executors of the estate of Joseph B. Dickson, deceased, against the collector of internal revenue for the Fifth district of New Jersey, to recover $50,-

509.48, with interest, which they allege was erroneously assessed and collected as a federal estate tax under the provisions of section 402 (c) of the Revenue Act of 1918 (40 Stat. 1097 [Comp. St. Ann. Supp. 1919, § 6336¾c]). In consideration of the marriage about to be entered into by them, Joseph B. Dickson and Johanna Rose Maran on April 5, 1917, made an antenuptial settlement or contract between themselves and the Central Trust Company of New York as trustee. Mr. Dickson was a widower, having four children, and Miss Maran was a maiden lady. The evident object of Mr. Dickson was to make provision for Miss Maran, for his four children, and for the management and disposition of his property free from the restraint of dower rights. Miss Maran released to her intended husband all the rights in his property, real and personal, which he then had or might thereafter acquire, and Mr. Dickson transferred and delivered bonds of the face value of $500,000 to the Central Trust Company of New York, trustee, upon certain trusts, the pertinent ones of which follow:

"(1) Until the solemnization of the intended marriage the securities were to be held to and for the use of the husband.

"(2) Thereafter the annual income was to be paid to the husband during his life in quarterly installments.

"(3) If the intended wife survived the husband, the income was to be paid to her during her life or so long as she remained his widow.

"(4) If upon the death of the wife without having remarried there was surviving her issue of the contemplated marriage, the corpus of the trust estate was to be distributed to such issue in equal shares; but, if there was no such issue, the corpus was to be distributed in equal shares amongst the husband's four children by a former marriage.

"(5) If the wife remarried and there was issue then living of her marriage to the founder of the trust one-fifth of the corpus of the trust estate was to be distributed to her and the remaining four-fifths in equal shares among such issue; but. if there were no issue, three-fifths of the corpus was to pass to her and the remaining two-fifths was to be distributed in equal shares amongst the founder's four children by a former marriage.

"(6) Should the death of the wife occur before that of the decedent then the living issue, if any, of the marriage were to receive the entire corpus; but if there were no such issue, then the whole corpus was to be paid over to and become the property of the husband."

The marriage took place April 11, 1917, six days after the execution of the contract. Mr. Dickson died on December 12, 1919. After his death, the executors of his estate filed a federal estate tax return in which the securities transferred to the trustee were not included. The Commissioner of Internal Revenue, upon a review of the return, determined that the value of the securities at the time of the decedent's death was $407,459, and that they should have been included in the return. The inclusion of this amount in the gross estate increased the estate tax $68,209.78, which the executors paid under protest on July 27, 1922.

It is admitted that the value of Mrs. Dickson's life interest in the securities is $360,782.03, and the additional tax attributable to this amount is $50,509.48. The executors filed claim on January 13, 1923, for refund of this sum. The claim was rejected on March 22, 1923, and the executors brought this suit to recover it with interest. Defendant filed a motion to strike out the complaint. On the hearing the District Court entered an order denying the motion and allowing the defendant

15 days in which to file an answer, and further provided therein that, in default of filing an answer within that time, judgment would be entered for the plaintiffs. An answer was not filed, and so on August 13, 1923, judgment was entered for the plaintiffs for $53,540.05.

Section 402 of the act provides:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"* * * (c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this act), except in case of a bona fide sale for a fair consideration in money or money's worth. * * * *"

There is no question that Mr. Dickson made a transfer and created a trust in favor of his intended wife, the possession and enjoyment of which were to take effect after his death. The question is: Does this transaction come within the exception in that it was "a bona fide sale for a fair consideration in money or money's worth"? It was bona fide. There is not a hint, or even a suspicion, that there was a purpose on the part of anybody to avoid the payment of taxes or to do anything questionable. It was a purely business transaction, which was honorable and above-board. There are therefore only three questions: Was this transfer a sale? Was the consideration fair? Was it in money or money's worth?

Many courts have defined a legal sale:

It is "a transmutation of property from one man to another in consideration of some price." 2 Blackstone, 446; Dunn v. Mayo Mills, 134 Fed. 804, 810, 67 C. C. A. 450. "A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent." Five Per Cent. Cases, 110 U. S. 471, 478, 4 Sup. Ct. 210, 214 (28 L. Ed. 198). "A sale is a contract by which, for a consideration, one transfers to another property or an interest therein." Yick Sung v. Herman, 2 Cal. App. 633, 83 Pac. 1089, 1091. "A sale is a contract whereby one acquires a property in the thing sold and the other parts with it for a valuable consideration." Cole v. Laird, 121 Iowa, 146, 96 N. W. 744. "Every transfer of property for an equivalent is practically and essentially a sale, and * * * money's worth is a valuable consideration [for the sale] as much as money itself." Huff v. Hall, 56 Mich. 456, 23 N. W. 88.

The intended husband transferred to the trust company, for the benefit of the intended wife, the property out of which she was to receive a certain interest. The exact amount which she would receive was dependent upon the happening of some one of the various contingencies set out in the contract. In return for this new property right, she absolutely extinguished her inchoate right of dower in everything that he then had or might thereafter acquire.

[1] We think that this transaction constituted a sale. The husband absolutely sold his right in the securities as defined and limited in the contract and the intended wife purchased them with the property constituting her inchoate right of dower. Her dower rights in all his property and his rights in the securities within certain limits, which would inevitably become definite, were gone forever.

[2] Was the consideration fair? It must be readily admitted that it was fair, in the sense that it was free from fraud or intention of the

parties to evade the payment of taxes. It was also fair in the sense that there was no concealment of any fact, relating to the consideration, by one from the other, or by either from the collector. It is to be observed that Congress in this act used the word "fair," as distinguished from the word "adequate," as used in the Internal Revenue Act of June 30, 1864 (13 Stat. 218, 288, § 132), and the word "full" as used in the Massachusetts act (Gen. Laws 1921, c. 65, § 3). The Standard Dictionary defines "fair" as "showing no partiality, prejudice, or favoritism; hence, upright, honest; equitable, just;" "nearly or fully up to the average; moderately satisfactory." Webster defines it as "free from suspicion or bias, equitable, just," and gives as synonyms, "equitable" and "reasonable."

The phrase "fair consideration" has received judicial construction as used in section 67e of the Bankruptcy Act of 1898 (Comp. St. § 9651[e]), which provides that all conveyances and transfers of the property of a person adjudged a bankrupt within four months prior to the filing of the petition in bankruptcy with intent on his part to hinder, delay, or defraud his creditors shall be null and void as against his creditors except as to purchasers in good faith and for a present *fair consideration.* It was contended in the case of Myers v. Fultz, 124 Iowa, 437, 100 N. W. 351, that "fair consideration" meant a just equivalent of the thing purchased, but Chief Justice Deemer, in a very careful and well-considered opinion held that the word "fair" meant no more than honest or free from suspicion; that it was not intended as the equivalent of "adequate," unless the inadequacy was such as to indicate a purpose on the part of the vendor to cheat or wrong his creditors. Dunlop v. Thomas, 28 Wash. 521, 68 Pac. 909, is to the same effect. We think Congress, in using the words "fair consideration," meant to distinguish them from "adequate consideration," as used in the act of 1864. Otherwise it would have used the word of the former act. "Fair consideration" means a consideration which under all the circumstances is honest, reasonable, and free from suspicion, whether or not strictly "adequate" or "full."

Mr. Dickson at the time of his marriage was 56 years of age. He was a rich man, and while the bulk of his property was personal, it is not unreasonable to suppose that it might become real before the time under mortuary tables he would be expected to die. Again, it was entirely possible that he might become a resident in a jurisdiction, Pennsylvania, for instance, in which his wife would have in his personal property an interest that he could not defeat by will. In either of these contingencies, the consideration in this case might become not only unfair to the wife, but also inadequate. We think that, in view of all the circumstances, the consideration was fair.

[3] The collector contends that, while marriage in itself is a valuable consideration, it is not money or money's worth. However, this may be, we are not called upon to decide this question. The exact question is whether or not the property constituting her inchoate right of dower, for which Mr. Dickson sold the securities, was money or money's worth. The statement of the proposition is its own answer. Inchoate right of dower is the separate property of the wife, and has pecuniary value and is money's worth. Beal's Executor v. Strom, 26

N. J. Eq. 372, 375; Wheeler v. Kirtland, 27 N. J. Eq. 534; Magniac v. Thomson, 32 U. S. (7 Pet.) 346, 8 L. Ed. 709.

The transaction, in our opinion, was a bona fide sale for a fair consideration for money's worth, and the judgment of the District Court is affirmed.