FARID–ES–SULTANEH v. COMMISSIONER OF INTERNAL REVENUE.

No. 154, Docket 20400.

Circuit Court of Appeals, Second Circuit.

April 11, 1947.

CLARK, Circuit Judge, dissenting.

Herbert E. Kaufman, of New York City (August. Merrill, of Utica, N.Y., and Arthur L. Newman, II, of New York City, of counsel), for appellant.

Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott and S. Dee Hanson, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The problem presented by this petition is to fix the cost basis to be used by the petitioner in determining the taxable gain on a sale she made in 1938 of shares of corporate stock. She contends that it is the adjusted value of the shares at the date she acquired them because her acquisition was by purchase. The Commissioner's position is that she must use the adjusted cost basis of her transferor because her acquisition was by gift. The Tax Court agreed with the Commissioner and redetermined the deficiency accordingly.

The pertinent facts are not in dispute and were found by the Tax Court as they were disclosed in the stipulation of the parties substantially as follows:

The petitioner is an American citizen who filed her income tax return for the calendar year 1938 with the Collector of Internal Revenue for the Third District of New York and in it reported sales during that year of 12,000 shares of the common stock of the S. S. Kresge Company at varying prices per share, for the total sum of $230,802.36 which admittedly was in excess of their cost to her. How much this excess amounted to for tax purposes depends upon the legal significance of the facts now to be stated.

In December 1923 when the petitioner, then unmarried, and S. S. Kresge, then married, were contemplating their future marriage, he delivered to her 700 shares of the common stock of the S. S. Kresge Company which then had a fair market value of $290 per share. The shares were all in street form and were to be held by the petitioner "for her benefit and protection in the event that the said Kresge should die prior to the contemplated marriage between the petitioner and said Kresge." The latter was divorced from his wife on January 9, 1924, and on or about January 23, 1924 he delivered to the petitioner 1800 additional common shares of S. S. Kresge Company which were also in street form and were to be held by the petitioner for the same purposes as were the first 700 shares he had delivered to her. On April 24, 1924, and when the petitioner still retained the possession of the stock so delivered to her, she and Mr. Kresge executed a written ante-nuptial agreement wherein she acknowledged the receipt of the shares "as a gift made by the said Sebastian S. Kresge, pursuant to this indenture, and as an ante-nuptial settlement, and in consideration of said gift and said ante-nuptial settlement, in consideration of the promise of said Sebastian S. Kresge to marry her, and in further consideration of the consummation of said promised marriage" she released all dower and other marital rights, including the right to her support to which she otherwise would have been entitled as a matter of law when she became his wife. They were married in New York immediately after the ante-nuptial agreement was executed and continued to be husband and wife until the petitioner obtained a final decree of absolute divorce from him on, or about, May 18, 1928. No alimony was claimed by, or awarded to, her.

The stock so obtained by the petitioner from Mr. Kresge had a fair market value of $315 per share on April 24, 1924, and of $330 per share on, or about May 6, 1924, when it was transferred to her on the books of the corporation. She held all of it for about three years, but how much she continued to hold thereafter is not disclosed except as that may be shown by her sales in 1938. Meanwhile her holdings had been increased by a stock dividend of 50 per cent, declared on April 1, 1925; one of 10 to 1 declared on January 19, 1926; and one of 50 per cent, declared on March 1, 1929. Her adjusted basis for the stock she sold in 1938 was $10.66⅔ per share computed on the basis of the fair market value of the shares which she obtained from Mr. Kresge at the time of her acquisition. His adjusted basis for the shares she sold in 1938 would have been $0.159091.

When the petitioner and Mr. Kresge were married he was 57 years old with a life expectancy of 16½ years. She was then 32 years of age with a life expectancy of 33¾

years. He was then worth approximately $375,000,000 and owned real estate of the approximate value of $100,000,000.

The Commissioner determined the deficiency on the ground that the petitioner's stock obtained as above stated was acquired by gift within the meaning of that word as used in § 113(a) (2) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1048, and, as the transfer to her was after December 31, 1920, used as the basis for determining the gain on her sale of it the basis it would have had in the hands of the donor. This was correct if the just mentioned statute is applicable, and the Tax Court held it was on the authority of Wemyss v. Commissioner, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958, 156 A.L.R. 1022, and Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963.

The issue here presented cannot, however, be adequately dealt with quite so summarily. The Wemyss case determined the taxability to the transferor as a gift, under §§ 501 and 503 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 580, 585, and the applicable regulations, of property transferred in trust for the benefit of the prospective wife of the transferor pursuant to the terms of an ante-nuptial agreement. It was held that the transfer, being solely in consideration of her promise of marriage, and to compensate her for loss of trust income which would cease upon her marriage, was not for an adequate and full consideration in money or money's worth within the meaning of § 503 of the statute, the Tax Court having found that the transfer was not one at arm's length made in the ordinary course of business. But we find nothing in this decision to show that a transfer, taxable as a gift under the gift tax, is ipso facto to be treated as a gift in construing the income tax law.

In Merrill v. Fahs, supra, it was pointed out that the estate and gift tax statutes are in pari materia and are to be so construed. Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20. The estate tax provisions in the Revenue Act of 1916 required the inclusion in a decedent's gross estate of transfers made in contemplation of death, or intended to take effect in possession and enjoy-

ment at or after death except when a transfer was the result of "a bona fide sale for a fair consideration in money or money's worth." Sec. 202(b), 39 Stat. 756, 777. The first gift tax became effective in 1924, and provided inter alia, that where an exchange or sale of property was for less than a fair consideration in money or money's worth the excess should be taxed as a gift. Rev.Act of 1924, § 320, 43 Stat. 314, 26 U.S. C.A. Int.Rev.Acts, page 81. While both taxing statutes thus provided, it was held that a release of dower rights was a fair consideration in money or money's worth. Ferguson v. Dickson, 3 Cir., 300 F. 961, certiorari denied 266 U.S. 628, 45 S.Ct. 126, 69 L.Ed. 476; McCaughn v. Carver, 3 Cir., 19 F.2d 126. Following that, Congress in 1926 replaced the words "fair consideration" in the 1924 Act limiting the deductibility of claims against an estate with the words "adequate and full consideration in money or money's worth" and in 1932 the gift tax statute as enacted limited consideration in the same way. Rev.Act 1932, § 503. Although Congress in 1932 also expressly provided that the release of marital rights should not be treated as a consideration in money or money's worth in administering the estate tax law, Rev.Act of 1932, § 804, 26 U.S.C.A. Int.Rev.Acts, page 642, and failed to include such a provision in the gift tax statute, it was held that the gift tax law should be construed to the same effect. Merrill v. Fahs, supra.

We find in this decision no indication, however, that the term "gift" as used in the income tax statute should be construed to include a transfer which, if made when the gift tax were effective, would be taxable to the transferor as a gift merely because of the special provisions in the gift tax statute defining and restricting consideration for gift tax purposes. A fortiori, it would seem that limitations found in the estate tax law upon according the usual legal effect to proof that a transfer was made for a fair consideration should not be imported into the income tax law except by action of Congress.

In our opinion the income tax provisions are not to be construed as though they were in pari materia with either the estate tax law or the gift tax stat-

utes. They are aimed at the gathering of revenue by taking for public use given percentages of what the statute fixes as net taxable income. Capital gains and losses are, to the required or permitted extent, factors in determining net taxable income. What is known as the basis for computing gain or loss on transfers of property is established by statute in those instances when the resulting gain or loss is recognized for income tax purposes and the basis for succeeding sales or exchanges will, theoretically at least, level off tax-wise any hills and valleys in the consideration passing either way on previous sales or exchanges. When Congress provided that gifts should not be treated as taxable income to the donee there was, without any correlative provisions fixing the basis of the gift to the donee, a loophole which enabled the donee to make a subsequent transfer of the property and take as the basis for computing gain or loss its value when the gift was made. Thus it was possible to exclude from taxation any increment in value during the donor's holding and the donee might take advantage of any shrinkage in such increment after the acquisition by gift in computing gain or loss upon a subsequent sale or exchange. It was to close this loophole that Congress provided that the donee should take the donor's basis when property was transferred by gift. Report of Ways and Means Committee (No. 350, P. 9, 67th Cong., 1st Sess.). This change in the statute affected only the statutory net taxable income. The altered statute prevented a transfer by gift from creating any change in the basis of the property in computing gain or loss on any future transfer. In any individual instance the change in the statute would but postpone taxation and presumably would have little effect on the total volume of income tax revenue derived over a long period of time and from many taxpayers. Because of this we think that a transfer which should be classed as a gift under the gift tax law is not necessarily to be treated as a gift income-tax-wise. Though such a consideration as this petitioner gave for the shares of stock she acquired from Mr. Kresge might not have relieved him from liability for a gift tax, had the present gift tax then been in effect, it was nevertheless a fair consideration which prevented her taking the shares as a gift under the income tax law since it precluded the existence of a donative intent.

■ Although the transfers of the stock made both in December 1923, and in the following January by Mr. Kresge to this taxpayer are called a gift in the ante-nuptial agreement later executed and were to be for the protection of his prospective bride if he died before the marriage was consummated, the "gift" was contingent upon his death before such marriage, an event that did not occur. Consequently, it would appear that no absolute gift was made before the ante-nuptial contract was executed and that she took title to the stock under its terms, viz: in consideration for her promise to marry him coupled with her promise to relinquish all rights in and to his property which she would otherwise acquire by the marriage. Her inchoate interest in the property of her affianced husband greatly exceeded the value of the stock transferred to her. It was a fair consideration under ordinary legal concepts of that term for the transfers of the stock by him. Ferguson v. Dickson, supra; McCaughn v. Carver, supra. She performed the contract under the terms of which the stock was transferred to her and held the shares not as a donee but as a purchaser for a fair consideration.

■ As the decisive issue is one of law only, the decision of the Tax Court interpreting the applicable statutory provisions has no peculiar finality and is reviewable. Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670.

Decision reversed.

CLARK, Circuit Judge (dissenting).

The opinion accepts two assumptions, both necessary to the result. The first is that definitions of gift under the gift and estate tax statutes are not useful, in fact are directly opposed to, definitions of gift under the capital-gains provision of the income tax statute. The second is that the circumstances here of a transfer of the stock some months before the marriage showed, contrary to the conclusions of the

Tax Court, a purchase of dower rights, rather than a gift. The first I regard as doubtful; the second, as untenable.

It is true that Commissioner of Internal Revenue v. Wemyss, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958, 156 A.L.R. 1022, and Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963, which would require the transactions here to be considered a gift, dealt with estate and gift taxes. But no strong reason has been advanced why what is a gift under certain sections of the Revenue Code should not be a gift under yet another section. As a matter of fact these two cases indicate that the donative intent of the common law is not an essential ingredient of a gift for tax purposes. Conversely love, affection, and the promise of future marriage will not be consideration adequate to avoid the gift tax. If that is so, it would seem that these should not be sufficient to furnish new and higher cost bases for computing capital gains on ultimate sale. The Congressional purpose would seem substantially identical—to prevent a gap in the law whereby taxes on gifts or on capital gains could be avoided or reduced by judicious transfers within the family or intimate group.

But decision on that point might well be postponed, since, to my mind, the other point should be decisive. Kresge transferred the stock to petitioner more than three months before their marriage. Part was given when Kresge was married to another woman. At these times petitioner had no dower or other rights in his property. If Kresge died before the wedding, she could never secure dower rights in his lands. Yet she would nevertheless keep the stock. Indeed the specifically stated purpose of the transfer was to protect her against his death prior to marriage. It is therefore difficult to perceive how her not yet acquired rights could be consideration for the stock. Apparently the parties themselves shared this difficulty, for in their subsequent instrument releasing dower rights they referred to the stock transfer as a gift and an antenuptial settlement.

If the transfer be thus considered a sale, as the majority hold, it would seem to follow necessarily that this valuable consideration (equivalent to one-third for life in land valued at one hundred million dollars) should have yielded sizable taxable capital gains to Kresge, as well as a capital loss to petitioner when eventually she sold. I suggest these considerations as pointing to the unreality of holding as a sale what seems clearly only intended as a stimulating cause to eventual matrimony.

Since Judge Murdock in the Tax Court found this to be a gift, not a sale, and since this decision is based in part at least upon factual considerations, it would seem binding upon us. At any rate, it should be persuasive of the result we ought to reach.