

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 24, 1947

Honorable George H. Shepperd
Comptroller of Public Accounts
Austin, Texas                    Opinion No. V-264

Re:  Whether or not under
     submitted facts a real
     property transfer made
     less than two years be-
     fore decedent's death
     is subject to inheritance
     tax by virtue of Article
Dear Sir:                        7117, R.C.S.

        You have asked for an opinion from this Depart-
ment as to whether or not the property described in your
request is subject to inheritance tax by virtue of Article
7177, R.C.S.  We quote the following from your letter of
April 11, 1947:

        "Mr. Albert M. Bitter died a resident
of Bexar County on January 23, 1946, and at
the proper time an inheritance tax report
was filed for his estate.  We are now examin-
ing the report and in our investigation we
have found that the decedent in September of
1944, by deed conveyed to the Friars of the
Atonement, Inc., a religious organization in
New York, 943.45 acres of land in Bexar County,
and in consideration thereof said Friars of the
Atonement, Inc. agreed to erect two churches at
a cost of not less than $35,000.00 each.  The
time and place, as well as the plans for erec-
tion of said churches, are at the discretion of
the said Friars of the Atonement, Inc.

        "Furthermore, the Friars of the Atonement,
Inc. promises and agrees to pay to the said Al-
bert M. Bitter the sum of $250.00 per month for
life."

        The copy of the instrument which you enclose and
to which you refer as "the deed" fails to show a place for
the grantor's signature.  From the facts at our disposal

we cannot ascertain whether or not "the deed" was properly executed and delivered in compliance with the requirements of Article 1288, R.C.S.; however, we will assume for the purpose of answering your question that there was an absolute and valid conveyance by Albert M. Bitter to the Friars of Atonement, Inc. of all of his interest in the property described by the instrument.

Prior to 1939 there was no provision in our statutes for taxing transfers made "in contemplation of death". At that time the legislature inserted in Article 7117, Ch. V, Title 122, R.C.S., the following provision:

"Any transfer made by a grantor, vendor or donor, whether by deed, grant, sale or gift, shall, unless shown to the contrary, be deemed to have been made in contemplation of death and subject to the same tax as herein provided, if such transfer is made within two (2) years prior to the death of the grantor, vendor, or donor, of a material part of his estate, or if the transfer made within such period is in the nature of a final distribution of property and without adequate valuable consideration."

This provision was retained unchanged when Article 7117 was again amended in 1945.

The source of many of the provisions of Chapter V, entitled "Inheritance Tax", lies in the Federal Estate Tax Act, 26 U.S.C.A. Int. Rev. Code, Ch. 3. The presumption is that the legislature knew of the construction which had been given these provisions prior to their adoption and therefore intended to adopt the statute as construed by the Federal Courts. Blackmon v. Hansen, 140 T. 536, 169 S.W. 2d 962, citing Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S.W. 301; 39 Tex. Jur., p. 264 § 140; and other authorities. For this reason the Federal cases decided under Section 811 (c) of the Federal Act, from which those parts of Article 7117 which are decisive of this question are drawn, must be considered. Nor need our consideration be limited to those Federal cases which were decided prior to 1939; for inasmuch as our courts have not as yet construed that part of the '39 amendment which provides that certain transfers if made in contemplation of death are taxable, the recent pronouncements of the Federal Courts are highly persuasive.

Section 811 of Title 26, U.S.C.A., provides that there shall be included in valuing the gross estate of a decedent "all property, both real and personal, tangible and intangible, wherever situated except real property situated outside of the United States . . ." to the extent of the decedent's interest, as set out in the subdivisions which follow.

Subdivision (c), "Transfers in contemplation of, or taking effect at death", reads as follows:

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter."

A striking and important difference between the quoted provisions of Article 7117 and those of Section 811 (c) lies in the fact that under the Federal law "any transfer" which the decedent has "at any time made" is taxable if made "in contemplation of death". The Texas Statute is silent with regard to the taxing of "any transfers" in contemplation of death except those made "within two (2) years prior to the death of the grantor, vendor, or donor".

The transfer in question here was made within the two year period. The Federal cases which have dealt with the application of the rebuttable presumption (so classified in many cases, for example, U.S. v. Wells, 283 U.S. 102, 51 S. Ct. 447; Rea v. Heiner, 6 F (2d) 389; Myers v. Magruder, 15 F. Supp. 488) under the Federal law and which were decided before 1939 should therefore be decisive unless other major variations exist. It should be noted at the outset, however, that those cases dealing with transfers in contemplation of death made "at any time" are indispensable to any study of the meaning of the phrase "contemplation of death" as construed by the Federal courts.

Let us then examine the transfer made by Mr. Albert M. Bitter to the Friars of the Atonement, Inc. in the light of the foregoing general statements.

First of all here we have a "transfer" "made by a grantor" "by deed" "within two (2) years prior to the death of the grantor". So much is clear and indisputable.

The preliminary inheritance tax report from your files and other information which you have given us establishes that the value of the property transferred was approximately $80,000 and that the estate left at death by Albert M. Bitter was worth approximately $35,000". Thus at first glance there would seem to have been a transfer "of a material part" of Albert M. Bitter's estate.

However, the statistics compiled by Mr. Edmund M. Pavenstedt and given in the very excellent article Taxation of Transfers in Contemplation of Death: A Proposal for Abolition, 54 Yale L. J. 70; to which we will refer frequently throughout this opinion, would indicate otherwise. Mr. Pavenstedt says that:

> "As far as concerns the vague requirement that the transfer must be of a 'material part' of decedent's property, the 137 cases which mention the proportion of the gift to the total estate show the following meaningless results:

|  | "Gifts held to be not in contemplation of death | Gifts held to be in contemplation of death |
|---|---|---|
| Less than 10% | 8 | 3 |
| 10% to 20% | 21 | 3 |
| 20% to 40% | 18 | 8 |
| 40% to 60% | 21 | 12 |
| 60% to 70% | 6 | 3 |
| 70% to 80% | 3 | 0 |
| 80% to 90% | 8 | 0 |
| 90% to 99% | 6 | 4 |
| 100% | 8 | 5 " |

Thus there would seem to be no one guiding Federal construction of this part of the statute which could be presumed to have been adopted at the time the Texas statute was enacted; nor may one be drawn by way of persuasive analogy from the later Federal cases. The failure of the Federal Courts to give more consideration to the statutory requirement of the "materiality" of the part transferred is, in the writer's opinion, easily explained. In general the rebuttable presumption created by the Federal statute adds little to the customary presumption in favor of the correctness of any determination made by the Commissioner. Transfers in Contemplation of Death, (previously cited); Welch v. Helvering, 290 U.S. III; 54 S. Ct. 8; Commissioner v. Heininger, 64 S. Ct. 249; 320 U.S. 467. Since under the Federal act any transfer regardless of its proportionate value to the value of the total estate is taxable if made in contemplation of death, and since the finding of "taxability" by the Commissioner results in the same allocation of the burden of proof as does the clause which creates the rebuttable presumption, there is little excuse for making "materiality" a decisive factor when the transfer occurs within the two year period. To do so would result in making it more difficult to impose a tax on transfers made during the very period within which transfers are presumptively made in contemplation of death.

Under the Texas statute, however, the only transfers which are taxable at all are those either of "a material part" of the estate or "in the nature of a final distribution of property". Therefore, the "materiality of the part transferred seems an inescapable requisite to the imposition of the tax where the transfer is not assailed as "being in the nature of a final distribution etc.".

This Department's Opinion O-6678 discusses some of the decisions from other jurisdictions which have construed the meaning of the word "material" as used in statutes similar to the Texas statute. Various tests may be applied, say the courts; for example, "the ratio the gift bears to the whole estate is a very important factor, /but/it is not per se the determining factor in each case. The size of the gift itself irrespective of the size of the estate has a direct bearing upon the answer." In Re Stephenson's Estate, 177 N.W. 579. Likewise to be considered is the time within which the estate could be disposed of were the gifts continued. Chase's Executrix v. Commonwealth, 145, S.W. (2d) 58. In general it is recognized that the question of materiality is a judicial question which must be determined from the facts and circumstances of each case.

Applying the tests set out above to the facts of this case it appears that Mr. Bitter transferred approximately 4/5 of his total estate. Even had the estate been a larger one the value of the property transferred is sizeable by any standard. The residue of the estate was not large enough to support another such gift. Clearly the requirement of "materiality" has been met.

The Federal statute follows "material part of his property" immediately with "in the nature of a final distribution, etc.", i.e., a further requirement has been added to that of "materiality" of the estate transferred. This is not true of the Texas statute in which the word "or" appears before the phrase "if the transfer made within such period is in the nature of a final distribution of property and without adequate valuable consideration." As a result the Texas statute seems to be defining two types of transfers, both of which are taxable if made in contemplation of death. The transfer in this case being of the first type we need not determine whether or not it was a transfer "in the nature of a final distribution of property" nor pass on whether or not this phrase is to be construed from the standpoint of the effect of the transfer or from the intent of the transferor.

The exemption which is accorded transfers for "adequate valuable consideration" is contained only in the clause which makes taxable transfers "in the nature of a final distribution"; whereas in the Federal statute the exemption for "bona fide sale for an adequate and full consideration in money or money's worth" is placed following the enumeration of all the various transfers which

811 (c) makes taxable. The last sentence of 811 (c), which creates the rebuttable presumption, embodies the exception by reference in the phrase "without such consideration". However, to deny the exemptive effect of the phrase "without adequate valuable consideration" on the type transfer first named in the Texas statute would be to create an obviously unintended absurdity. We will therefore next consider whether or not Mr. Albert M. Bitter's transfer of a "material part of his estate" was made for an "adequate valuable consideration".

Prior to the act of 1926 the Federal statute used the phrase "a bona fide sale for fair consideration in money or money's worth". This phrase was interpreted in Ferguson v. Dickson, 300 F. 961 (writ of certiorari denied in (1924) 266 U. S. 628, 45 S. Ct. 126). The Court held that "fair consideration" was " a consideration which under all the circumstances is honest, reasonable, and free from suspicion, whether or not strictly 'adequate' or 'full'". One of the grounds given for the holding was that a previous revenue act had used the word "adequate". Evidently displeased with this result Congress before 1939 again changed the provision and the phrase now used repeatedly by the Internal Revenue Code, 26 U.S.C.A., Title 26, Sections 811 and 812 is "adequate and full consideration for money or money's worth". Although, the terms of the Texas statute "adequate valuable consideration" are not literally those of the Federal statutes, under the holding of the Ferguson case, the use of the word "adequate" alone demands something more by way of consideration that "which under all circumstances is honest, reasonable and free from suspicion".

A "valuable consideration" may consist of something other than the payment of money Kennedy Pasture Company v. State, 196 S.W. 295. "Valuable" means more than "nominal". The subject matter of the contract and its value to the parties concerned must be considered in determining whether or not a "valuable consideration" exists; however, it is not necessary that the consideration exchanged be of relatively equal value. Griffin v. Bell, 202 S.W. 1036, 1037.

Let us examine the various recitals in "the deed" which set forth the consideration for this transfer. A phrase in the second paragraph reads as follows:

"WITNESS: That the said Albert M. Bitter, for and as an evidence of love and devotion for

the Roman-Catholic Religion and the desire
to have the Roman-Catholic Religion spread
to all mankind, does by these presents, etc.,
. . ."

If this phrase be construed as being the equiva-
lent of a statement that Albert M. Bitter made the con-
veyance "in consideration" of "love and devotion" it is
well settled that such consideration in certain circum-
stances may be held to be "good" consideration but that it
is not "valuable" consideration. Bouvier's Law Dictionary,
3rd Revision, page 612-613.

By the third paragraph of "the deed" "the Friars
of the Atonement, Inc. promises and agrees to pay the said
Albert M. Bitter, the sum of Two Hundred and Fifty($250.00)
Dollars per month on the first day of each month, commenc-
ing July 1, 1944, and ending with the regular monthly pay-
ments next preceeding the death of the said Albert M.
Bitter". Whether or not an annuity constitutes sufficient
consideration within the meaning of the particular statute
has been considered in many decisions. In general, "the
decisive point upon which the result seems to depend is
. . . whether or not the annuity to be paid the transferor
in consideration for the transfer of the property at
least equals the economic value of the property transferr-
ed. Assuming that this statement is correct, the test is
whether or not considering all the circumstances, the
transferor could have bought in the open market the stipu-
lated annuity in exchange for the property transferred."
157 A.L.R. 995. See particularly note on Updike v. Com-
missioner of Internal Revenue, 88 F. (2d) 807 (writ of
certiorari denied 301 U.S. 708).

At the time Albert M. Bitter made the transfer
to the Friars of the Atonement, Inc. he was past seventy
three years of age. Even assuming that he was then in ex-
cellent health for a man of his age and that he had paid
the highest current market price, he could have purchased
an annuity to pay the amount the Friars of the Atonement
agreed to pay for approximately thirty-one thousand dol-
lars. Instead he transferred property worth eighty thou-
sand dollars. Thus as consideration for the transfer the
annuity would scarcely meet the old test of the Ferguson
case; i.e., under all the circumstances it does not seem
to be "honest, reasonable, and free from suspicion." It
falls far short of being the "adequate valuable considera-
tion" requisite to gaining the exemption.

Finally by paragraphs 5, 6 and 7 of "the deed" the Friars of the Atonement, Inc. promise to erect two memorial churches at a cost of not less than $35,000 each. One church is to constitute a memorial "to the honor of Mr. Albert M. Bitter and his relatives"; the other, "to the honor of . . . Mrs. Albert M. Bitter and her relatives." The Friars of the Atonement promise to "diligently look to the erection of both Churches as soon as they can conveniently do so after sale or income from the aforementioned property makes this procedure financially possible;" but "the time and place . . . are at the discretion of The Father General of the Friars of the Atonement, Inc. in consultation with his Board of Directors."

Many Federal cases have dealt with the deductibility of decedent's unpaid pledges to charitable, religious or educational institutions. The analogy between that problem and the one we are here considering is obvious. Although it is generally conceded that a pledge made in consideration of a stipulated application or use of the property transferred is sufficiently supported by consideration to constitute a valid contract, most of the cases have held that this was not sufficient to meet the requirement of 303 (a) (1) which allowed exemptions for claims, etc., against the estate, etc., if for an "adequate and full consideration for money or money's worth." 157 A.L.R. 1015. The two leading cases which reach this result are <u>Porter v. Commissioner of Internal Revenue,</u> (1932, C.C.A. (2d) 60 F. (2d) 673 (affirming (1931) 23 B.T.A. (F) 1016, affirmed in (1933) 288 U.S. 436, 77 L. Ed. 880, 53 Sp. Ct. 451) and <u>Taft v. Commissioner of Internal Revenue</u> (1938) 304 U.S. 351; 58 S. Ct. 891. (The Revenue Act of 1942 changes this and grants exemption if the amount would have been exempt as a charitable bequest; but the past holdings are still authority generally for what constitutes "adequate and valuable consideration for money or money's worth.")

Nor does the agreement to erect the churches, etc., together with the payment of the annuity constitute "adequate valuable. consideration." To so hold would in effect create a new exemption for religious, educational or charitable bequests. To be exempt under Article 7122, R.C.S., a religious, educational or charitable bequest must be used within the State, and, by recent decision, this geographical limitation on the use must be expressed in the will itself. <u>Presbyterian Church in the United States v. Sheppard,</u> 198 S.W. (2d) 282. In other words a

man who knew that death must soon come to him could by accepting a consideration less than "adequate and valuable" and, in addition, by making certain "non-geographical" stipulations as to use of the property transferred circumvent the requirements of both Article 7122 and Article 7117.

Having thus reached the conclusion that this transfer was not made for an "adequate valuable consideration", it is subject to tax if the transfer was made "in contemplation of death".

In the leading case of United States v. Wells, 283 U.S. 1102, Mr. Chief Justice Hughes said:

"There can be no precise delimitation of the transactions embraced within the conception of transfer 'in contemplation of death' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute."

Mr. Pavenstedt has a great deal to say about this "dominant motive test" and the difficulties attendant to its application in the Yale Law Review Article previously quoted. He points out that shortly after the Wells case was decided the test was incorporated in U.S. Tres. Reg. 80 (1934 Ed.), Article 16 but that the varying decisions that followed and the discouraging record of the Government in its attempt to prove the requisite motive of a dead man in contemplation of death cases led to T. D. 4966, 1940 - 1 Cum. Bull. 220, which, despite the Wells case, in effect states, among other things, that a transfer is in contemplation of death if it is prompted by any motive associated with death, even though it may be motivated more strongly by motives clearly associated with life. However, since Mr. Pavenstedt's article was written, the Supreme Court has again spoken on this matter. Allen v. Trust Co. of Georgia, 66 Sp. Ct. 389, was decided January 28, 1946. The court says that certiorari was granted because of conflict between the judgment of the Circuit Court of Appeals and those

of other circuits. The following parts of the opinion reaffirm the "dominant motive" test.

"It was said in U. S. v. Wells /citation omitted/ that a gift is in contemplation of death within the meaning of the estate tax law if 'the motive which induces' it is 'of the sort which leads to testamentary disposition, . . . Since the purpose of the contemplation of death provision was to reach substitutes for testamentary dispositions in order to prevent evasions of the tax /citation to U.S. v. Wells omitted/, the statute is satisfied, it is said, where for any reason the decedent becomes concerned about what will happen to his property at his death and as a result takes action to control or in some manner effect its devolution.

"That is a correct statement of the governing principle for it presumes the existence of the requisite motive. The transfer is made in contemplation of death if the thought of death is the 'impelling cause of the transfer'. City Bank Farmers Trust Co. v. McGowan 323 U.S. 594, 595, 65 S. Ct., 496, 498. The transfer may be so motivated even though the decedent had no idea that he was about to die. /Citing U.S. v. Wells/. On the other hand, every man making a gift knows that what he gives away today will not be included in his estate when he dies. All such gifts plainly are not made in contemplation of death in the statutory sense. Many gifts, even to those who are the natural and appropriate objects of the donor's bounty, are motivated by 'purposes associated with life, rather than with the distribution of property in anticipation of death.' /Citing U. S. v. Wells/. Those motives cover a wide range. See 1 Paul, Federal Estate & Gift Taxation (1942) §§ 609 et seq.

"There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of

such desire may be a more compelling motive than any though of death. /Citing
U. S. v. Wells/. Whether such motive was
the dominant, controlling or impelling motive is a question of fact in each case."
(Emphasis added)

Various evidentiary factors /See 1 Paul Federal Estate and Gift Taxation (1942) § 615 et seq./
fortify the presumption that the transfer to the Friars
of Atonement was made in contemplation of death. The
advanced age of the transferor, the great value of the
property transferred as well as its proportion to the
decedent's estate all seem to indicate that the decedent was making a final disposition of his property.
Likewise, by the will itself, the Oblate Fathers, as
residuary legatees, receive $29,001.81 of the
$32,201.81 gross estate as estimated in the preliminary
Inheritance Tax Report. Thus Mr. Bitter by transfer
before death and by will left virtually all he possessed to the Catholic Church.. The transfer being of the
bulk of his estate it would seem to be not only "a
part of the general testamentary scheme", 1 Federal
Estate and Gift Taxation, previously cited, but the most
important part of the testamentary scheme. The churches
that are to be erected as an ultimate result of the transfer are to be memorials "to the honor of Mr. Albert M.
Bitter and his relatives. . . and to the honor of Mrs.
Albert M. Bitter and her relatives". All these facts
point to the conclusion that the thought of death, as a
controlling motive, prompted the transfer. Certainly
none of the facts at our disposal are sufficiently indicative of "motives associated with life" to overcome
the statutory presumption that the transfer was made in
contemplation of death. You are therefore advised that
the property transferred by Albert M. Bitter to the Friars
of the Atonement, Inc., is subject to inheritance tax by
virtue of Article 7117, R.C.S..

## SUMMARY

In order to come within that part of
Article 7117, R.C.S., which provides that
transfers made within two years prior to
the death of the decedent are presumptively
made in contemplation of death the property
transferred must constitute a material part

of the estate or the transfer must be in the nature of a final distribution of property. Annuity and agreement to build churches did not constitute the adequate valuable consideration necessary to exempt material part of estate transferred within two (2) years of death from State inheritance taxes. Where the submitted facts fail to overcome the statutory presumption of "contemplation of death" the property transferred is subject to inheritance tax by virtue of Article 7117, R.C.S.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Marietta Creel*
Mrs. Marietta Creel
Assistant

MC/lh

APPROVED:

*Price Daniel*

ATTORNEY GENERAL