William R. HAMBERG and Edwina Hamberg, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 22038.

United States Court of Appeals Ninth Circuit.

Sept. 6, 1968.

Myron E. Anderson (argued), Boise, Idaho, for appellants.

Lester Uretz (argued), Marina Halley (argued), Dept. of Justice, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Ann E. Belanger, Department of Justice, Washington, D. C., for appellee.

Before JOHNSEN,* ELY and CARTER, Circuit Judges.

PER CURIAM:

This petition for review of a decision of the Tax Court involves petitioners' federal income taxes for the taxable year 1959. Following the Commissioner's issuance of a statutory notice of deficiency, petitioners sought a redetermination in the Tax Court. That court upheld the Commissioner's decision, and petitioners now seek relief here. Our jurisdiction is conferred by section 7482 of the Internal Revenue Code of 1954.

The factual circumstances are clearly detailed in the unreported memorandum decision of the Tax Court, written by Judge Fay. Much of our statement of the case, which follows, is taken directly from Judge Fay's opinion.

Petitioners, William R. Hamberg and Edwina Hamberg (hereafter referred to as William and Edwina), husband and wife, are residents of Priest River, Idaho. William is a retired civil service employee. For many years a warm personal friendship had existed between petitioners and John and Florence Murray (hereafter referred to as John and Florence). William and John had been acquainted since approximately 1900. Following the petitioners' marriage in 1940, the couples often socialized on a regular basis. In 1947 Florence acted as godmother at the baptism of the petitioners' daughter. Following John's death in 1954, the friendship continued between petitioners and Florence, and Florence often looked to William for advice.

In 1955 Florence executed a will which named William as executor. In 1957, however, she executed a second will, naming another person executor in accord with William's request to that effect. Finally, in 1959, Florence executed a third will, naming a third executor. The beneficiaries of the third will were unrelated friends or neighbors of Florence, with the exception of her sister-in-law. William and Edwina were not named as beneficiaries, although their daughter was a beneficiary to the extent of a remainder share which would have been worth approximately five hundred dollars, assuming existence of the same facts as those which existed at Florence's death.

Following a period of hospitalization, Florence was admitted to the Sandpoint (Idaho) Manor Rest Home on September 16, 1959. Florence disliked the rest home and complained about the treatment which she was receiving there. During October 1959 she communicated with petitioners in four separate letters concerning her desire to leave the rest home. In every letter, except the last, Florence indicated that she would pay the petitioners if they would secure her release and provide her with accommodations in their home. In the first letter, dated October 5, 1959, Florence wrote, "I will pay you well and change my will so that you will get everything."

On October 7, 1959, petitioners visited Dar Cogswell, an attorney in Sandpoint. Petitioners related the circumstances concerning Florence, namely, that they

---

* Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

contemplated obtaining her medical release and taking care of her and that she had expressed an intention to transfer all her property to them in consideration therefor. Petitioners also talked with Florence's physician at that time, and he issued a certificate for her release from the rest home.

On the same day, petitioners obtained Florence's release, and they then took her directly to the offices of attorney Cogswell. The three informed Cogswell of their intention to execute an agreement providing for the transfer of Florence's property to petitioners in exchange for her future care and maintenance. They further requested Cogswell to prepare the necessary legal documents to accomplish this purpose. The Tax Court found that both Florence and William desired a written agreement so that future care would be assured. Petitioners and Florence thereupon executed the following agreement:

"THIS AGREEMENT Made this 7th day of October, 1959, between FLORENCE MURRAY, a widow, party of the first part, and WILLIAM R. HAMBERG and EDWINA HAMBERG, husband and wife, parties of the second part,
WITNESSETH:

"WHEREAS Party of the first part has arrived at an advanced age in life and desires to live with the parties of the second part in their home where she can be comfortable for the remainder of her life.

"NOW THEREFORE The said party of the first part hereby transfers and promises to transfer to the said parties of the second part, all of her property, both real and personal, wherever situate and of whatever kind and character, upon the agreement of the parties of the second part to furnish to her a comfortable home with the said parties of the second part.

"This agreement is made as the free and voluntary act of Florence Murray, a widow, party of the first part, and at her suggestion and request."

The Tax Court found that this agreement imposed upon the petitioners an obligation to care for and maintain Florence for the duration of her life and that, in exchange, the petitioners received items of consideration with a total fair market value of $12,533.25. This consideration was conveyed to the petitioners by appropriate methods of transfer. One item of real property was conveyed by warranty deed and another by quitclaim deed. Both instruments described the consideration for the transfer as "LOVE, AFFECTION, CARE, SUPPORT AND MAINTENANCE." A third instrument, which assigned a contract of sale to petitioners, stated the consideration to be "my care, support, maintenance, and whatever else may be necessary to make me reasonably comfortable during my lifetime." When the support agreement and property transfer instruments had been executed, Florence, in the presence of petitioners, destroyed her will dated March 9, 1959.

Following these transactions at the attorney's office, petitioners immediately took Florence to their home. where she resided until her death approximately two weeks later. At that time, Florence was eighty-six years of age, but, despite her advanced age, her death was somewhat unexpected, since her physician had stated to petitioners on October 7, 1959, that her condition was such that she could live an indeterminate number of years. Petitioners expended $939.23 in caring for Florence and paying her funeral expenses.

Petitioners did not include in their gross income for the taxable year 1959 any part of the value of the properties received from Florence. The Commissioner, however, in his statutory notice of deficiency, determined that the fair market value of the property received, less the expenses incurred, constituted ordinary income to petitioners. The Tax Court upheld this determination.

Petitioners contend, in contrast, that the transaction in question involved a purchase to the extent of the amount expended in satisfaction of their obligation

438

to Florence and a nontaxable gift as to the consideration received in excess of that amount. Petitioners base their contention principally upon section 2512 of the Internal Revenue Code of 1954, a section which deals with the imposition of gift taxes.

 The opinion of the Tax Court makes it clear that the court correctly understood the principles relevant to a proper determination of this type of issue, as these principles have been explained by the Supreme Court. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32 (1937). Furthermore, as the Supreme Court has stated, "the question here remains basically one of fact * * *." Commissioner of Internal Revenue v. Duberstein, 363 U.S. at 290, 80 S.Ct. at 1199. "[P]rimary weight in this area must be given to the conclusions of the trier of fact." Commissioner of Internal Revenue v. Duberstein, 363 U.S. at 289, 80 S.Ct. at 1199. Perhaps the most crucial finding made by the Tax Court was expressed in its opinion as follows:

"Florence's primary concern at the time of the transfer was to provide for her own future care and maintenance and to this end she and petitioners executed the agreement dated October 7, 1959 * * *. This agreement, and the property transfers subsequent thereto, coupled with the physical destruction of her will (in which petitioners were not listed as beneficiaries) lead us to the conclusion that Florence acted not from any sense of detached or disinterested generosity but rather to secure for herself the economic benefit of petitioners' written promise to care for and maintain her for the remainder of her life."

We have carefully reviewed the factual determinations made by the Tax Court. It would constitute an abuse of our power to hold that they are clearly erroneous.

We are not here concerned with the interpretation of statutes defining gift tax obligations. Our problem involves section 102(a) of the Internal Revenue Code of 1954, pertaining to taxable income. We are not necessarily bound by the considerations which might result in the finding of a taxable gift under section 2512 of the Code. As the Supreme Court has stated in an income tax case, "we find ourselves unfettered by the language and considerations ingrained in the gift and estate tax statutes." United States v. Davis, 370 U.S. 65, 69 n. 6, 82 S.Ct. 1190, 1193, 8 L.Ed.2d 335 (1962); see Lockard v. Commissioner of Internal Revenue, 166 F.2d 409, 412 (1st Cir. 1948); Farid-Es-Sultaneh v. Commissioner of Internal Revenue, 160 F.2d 812, 814–815 (2d Cir. 1947).

Affirmed.